J^MICHAEL E. KIRBY, Judge.

STATEMENT OF CASE

On March 21, 2001, the State charged the defendant with one count of aggravated burglary, a violation of La. R.S. 14:60, one count of attempt first-degree murder, a violation of La. R.S. 14:(27)30, and one count of forcible rape, a violation of La. R.S. 14:42.1. He pled not guilty at his arraignment on March 28, 2001. At the motions hearing, the court found probable cause and denied the motions to suppress the statements. On May 7, 2001, the court denied the defense motion to sever. The case proceeded to a two-day jury trial. On May 31, 2001, the jury convicted the defendant of unauthorized entry of an inhabited dwelling and aggravated battery but acquitted him of forcible rape. On June 8, 2001, the court denied the defendant’s mo *1133 tions for post judgment verdict of acquittal and reconsideration of sentence and granted bis motion for appeal. That same day, the court sentenced the defendant to serve four years on the unauthorized entry of an inhabited dwelling conviction and nine years without benefit of probation or suspension on the aggravated battery conviction, with the sentences to run consecutively-

\ STATEMENT OF FACT

Officer Duane Carkum testified that on November twenty-four, 2000, he responded to a rape call at 3840 Duplessis Street in the St. Bernard Project. When he arrived at the location he found D. J.[1], crying and very distraught. Through his investigation, he learned that the rapist gained entrance to the residence by breaking the kitchen window. D.J. identified her ex-boyfriend/defendant, William Coleman, as the rapist. Carkum secured the scene and turned the investigation over 'to the Sex Crimes Unit.
Detective Brian Baudier of the Sex Crimes Unit testified that he responded to a call of aggravated rape in the St. Bernard Project. At the scene, he was briefed by Officer Carkum and assumed the investigation of the case. After interviewing D. J., Baudier transported her to the Louisiana Medical Center for a sexual assault examination. Baudier returned to police headquarters, obtained a photograph of the defendant and returned to the hospital where D.J. positively identified the defendant as her assailant. Thereafter, Baudier obtained an arrest warrant for the defendant on charges of rape and aggravated burglary.
R. J., D. J.’s sister, stated that D.J. and defendant had had a romantic relationship and had a child together but were separated at the time of this incident. Ms. Joseph testified that she babysat D. J.’s son, D., on the morning of the attack. When she noticed D. J.’s car parked near her apartment, R.J. sent D. home. About five minutes later, D. returned to her house and told her his father, the defendant, was at his mother’s apartment. D. was visibly upset. Approximately twenty minutes after that, D.J. came to her house crying and distraught. D.J. told her that [¡¡the defendant broke into her apartment and raped her. D.J. called the police from R. J.’s house. R.J. accompanied D.J. back to her apartment to speak to the police. D.J. was so frightened that she could not return to her apartment. She stayed with R.J. for several days after the attack, and then moved to her mother’s house.
Officer Joseph Sylvie testified that on January 3, 2001, he responded to a 911 call at 4531 Iroquois Street. He met D.J. at her residence. Sylvie observed cuts on D. J.’s hands, neck, back and throughout her body. Sylvie learned that D. J.’s ex-boyfriend, the defendant, attacked her with a screwdriver as she exited her mother’s apartment on Iroquois Street. After he stabbed her with the screwdriver, the defendant grabbed D.J. by her neck, and dragged her down the street. D. J.’s eight-year old son witnessed the attack and told his grandmother, D. J.’s mother, who went to D. J.’s aid. Sylvie called an emergency unit to the scene and also contacted the domestic violence detective. He broadcast the defendant’s description over the radio. Sylvie subsequently obtained a warrant for the defendant’s arrest for aggravated battery.
D., D. J.’s eight-year old son, testified that the defendant is his father. D. recounted the January 3, 2001, incident. He said that that morning, he and his mother *1134 were at his grandmother’s house on Iroquois Street. As he and his mother loaded clothes into his mother’s car, the defendant ran up to his mother, and choked and slapped her to the ground. The defendant then proceeded to drag his mother down the street as he stabbed her with a screwdriver. D. ran to get help from his grandmother. The defendant stopped beating his mother when his grandmother threw a brick at the defendant. D. further testified that he and his mother were staying with his grandmother in January 2001, because the defendant broke into his mother’s apartment on November 24, 2000. Under crossjexamination4 D. stated that he saw the defendant at his mother’s apartment on November 24, 2000, and that they were just talking, not arguing.
Blanch Bartholomew testified by stipulation as a registered nurse and expert in sexual assault examination. Ms. Bartholomew stated that she practices in the Sexual Assault Unit at Charity Hospital. She explained the protocol of a sexual assault examination. Ms. Bartholomew recounted for the jury the facts of the assault, as related to her by D. J.. When she examined D. J., she noted scratches behind D. J.’s ears and a cut on her lip. Although Ms. Bartholomew said she found no physical trauma to D. J.’s genital area, she said that from her years of experience as a sexual assault examiner, the fact that there was no evidence of genital trauma did not mean that a woman was not raped. Ms. Bartholomew stated that because D.J. was sexually active and had given birth, it was plausible that penetration occurred without any outward trauma. Ms. Batho-lomew said that in her opinion D.J. had been raped.
D. J., testified that the defendant was her ex-boyfriend and the father of her son, D.. About two weeks prior to the November 24 incident, she called the police to remove the defendant from the apartment they shared in the St. Bernard Project. She said her relationship with the defendant ended because of drugs and other women. D.J. recounted that on November 23, 2000, she and D. spent the night at her mother’s house. The next morning, she returned home to find the defendant in her apartment. She tried to run but he grabbed her around her neck, and began throwing her around the apartment. He forced her into the bedroom where he raped her. D. came home after the assault and ate lunch. D.J. would not leave the apartment, fearing that the defendant would hurt their son or that the child would witness his mother endure further abuse from the defendant. After the de~ fendant |sleft the apartment, D.J. went to her sister’s house across the street and' contacted the police.[2] D.J. gave the police a statement, and was transported to Charity Hospital for a rape examination.
D.J. then related the January 3, 2001, incident. She explained that she and D. were living with her mother at that time because she was still traumatized by the November 24, 2000, incident. On the morning of January 3, she and D. were putting boxes into her car. She heard footsteps. As she turned to look, the defendant grabbed her by the neck, and threw her to the ground. He began choking her. He dragged her down the street, accusing her of trying to take his life. The assault continued as the defendant stabbed her with a screwdriver. The defendant released her when her mother threw a brick at him. D.J. thought the defendant was trying to kill her.
Officer Cory Robertson testified that he went to D. J.’s apartment in mid-November 2000, on a domestic disturbance call. *1135 D. J., defendant and the defendant’s mother were at the apartment. D.J. told the officer she wanted the defendant to leave the apartment. Robertson said there was no animosity between the parties. The defendant agreed to leave. Officer Robertson asked the defendant if he wanted to gather his belongings. The defendant declined to do so. The officer explained to the defendant that if he wanted to return to the apartment to retrieve his belongings, a police officer would have to be present to keep the peace. D.J. called Officer Robertson back to the apartment that same night because the defendant returned. Robertson canvassed the area, to no avail. After the officer left the area, yet another call went out that night. Once again, Officer Robertson ^returned to the area, and saw a subject fitting the defendant’s description in the courtyard. The subject fled when the officer exited his vehicle.
C. J., D. J.’s mother, testified that she received a phone call at work on November 24, 2000, telling her that D.J. had been raped. When C.J. saw D.J. later that night, she was nervous, jittery and crying. Her grandson, D., and D.J. moved into her house after the rape. Between the rape and the January 3, 2001, assault, the defendant called her home constantly to speak with D. J.. On January 3, 2001, D.J. was packing her ear to move back to her apartment. As C.J. worked inside, D. ran to her and told her that the defendant was taking D. J.. When C.J. went outside, she saw that the defendant had dragged D.J. to the corner. The defendant had D.J. on the ground choking her. C.J. threw a brick at the defendant. The assault ended, and the defendant walked away. C.J. helped D.J. into her house, and called the police.
William Coleman testified that he and D.J. lived together for a number of years arid that D. was his son. He also testified that in 1997, he and D.J. separated for about a year. During that time, he fathered a son, Devon, with Paulette Brown. Subsequent to Devon’s birth, he and D.J. resumed their relationship; however, D.J. had trouble accepting Devon, and objected to his supporting Devon and Paulette Brown. Around November 14, 2000, D.J. threw him out of the house because she believed he was still seeing Paulette Brown. On the morning of November 24, 2000, he attempted to call D.J. to make arrangements to gather his clothes and belongings from her apartment, and to return his key. When he could not contact her, he went to her apartment, and let himself in with his key. While he was there, D.J. came home, was surprised by his presence, and screamed. He explained his reason for being at the apartment. They talked about their relationship for about l7two hours. D. came over while they were talking, but D.J. did not want him to see the defendant, so she sent D. back to her sister’s house. They continued their conversation while sitting on the sofa, reminiscing about old times. There was no anger or animosity between them. He still loved her. He denied having sex or any physical contact with D. J.. He said that he never refused to allow D.J. to leave the apartment. He further denied breaking into the apartment, and said that the back window had been broken for some time prior to November 24, 2000.
On January 3, 2001, the defendant went to his mother’s house because he received word the police were looking for him. He learned that the charge was for some trouble he had with his girlfriend. Because he and D.J. did not have a fight, and she did not mention that she had filed charges, he assumed there was some mistake. He went to D. J.’s mother’s house to speak to her about the charges. He approached D.J. as she stood near her car. He grabbed her by her sweatshirt, and asked *1136 her why she wanted to send him to jail. D.J. swung at him; he pushed her away, and she fell down. As he helped her up, her mother came out of the house, and began yelling at him. He left the house in tears because he felt D.J. was trying to hurt him for no reason. He denied beating or attacking D.J. with a screwdriver.

ERRORS PATENT, ASSIGNMENT OF ERROR NUMBER 4

A review of the record for errors patent reveals two. First, the trial court sentenced the defendant immediately after denying his post-trial motions. The defendant did not waive his right to a twenty-four hour delay as mandated by La. C.Cr.P. art. 873, and attacks his sentence as constitutionally excessive on appeal.
|sIn State v. Augustine, 555 So.2d 1331 (La.1990), the Louisiana Supreme Court held that failure to waive the twenty-four hour delay voided the defendant’s sentence if the defendant attacks his sentence, even if the defendant fails to specifically allege this failure as an error on appeal.
However, there are instances where the failure to observe the twenty-four-hour delay is determined not to be reversible error although the sentence is challenged on appeal. In State v. Seals, 95-0305 (La.11/25/96), 684 So.2d 368, the Louisiana Supreme Court noted that the mandatory nature of the sentence distinguished that case from Augustine, supra, and found that the reversal of the sentence for failure to wait twenty-four hours between the denial of the motion and imposition of sentence was not warranted in the absence of prejudice. See also State v. Allen, 94-1895 (La.App. 4 Cir. 9/15/95), 661 So.2d 1078; State v. Diaz, 93-1309 (La.App. 3 Cir .4/6/94), 635 So.2d 499; State v. Williams, 97-970 (La.App. 5 Cir. 1/27/98), 708 So.2d 1086.
In State v. Bentley, 97-1552 (La.App. 4 Cir. 10/21/98), 728 So.2d 405, this Court held that any error in failing to observe the twenty-four hour delay in sentencing after the denial of a motion for new trial did not prejudice a defendant whose original sentence was vacated, and he was then found to be a habitual offender. See also State v. Brown, 95-124 (La.App. 5 Cir. 5/30/95), 656 So.2d 1070.
In State v. Dickerson, 579 So.2d 472 (La.App. 3 Cir.1991), the defendant challenged his sentence on appeal. The appellate court held that failure to observe the twenty-four hour delay was not reversible error where over a month passed between conviction and sentence, and a presentence investigation report had been ordered, so that there were no indications that the defendant’s sentence was |9hurriedly imposed without due consideration, and the defendant did not argue or in any way show that he was actually prejudiced. See also State v. Robinson, 463 So.2d 50 (La. App. 5 Cir.1985).
Similarly, in State v. Sam, 99-0300 (La. App.4.Cir.4/19/00), 761 So.2d 72, writ den. 2000-1890 (La.9/14/01), 796 So.2d 672, the defendant challenged his sentence on appeal. This Court held that any error in failing to observe the twenty-four hour delay in sentencing after the denial of a motion for new trial did not prejudice a defendant who was sentenced one month after his conviction, where there was no indication that the defendant’s sentence was hurriedly imposed, and the defendant did not argue or in any way show that he was actually prejudiced by the failure to observe the twenty-four hour delay.
This case is distinguishable from State v. Seals in that neither of the defendant’s convictions warranted mandatory sentences, and the trial court was afforded sentencing discretion. When the defendant challenges the penalty imposed and the imposed sentence is not mandatory, *1137 the failure to observe the twenty-four hour delay mandated by La.C.Cr.P. art. 873 cannot be considered harmless error. State v. Augustine, 555 So.2d 1331 (La.1990).
Further, unlike the defendant in State v. Bentley, the defendant is not a habitual offender whose original sentence was vacated upon adjudication.
In this case, unlike State v. Dickerson, there was a lapse of only one week between conviction and sentencing, and there was no presentence investigation report ordered.
Finally, this case is distinguishable from State v. Sam, supra, in that the defendant herein does argue on appeal that he was prejudiced by the trial court’s failure to observe the delay.
|10On the other hand, it can be argued that the defense in this case waived the twenty-four delay. In State v. Diaz, 93-1309 (La.App. 3 Cir. 4/6/94); 635 So.2d 499, defense counsel did not object to the court immediately imposing sentence after the denial of the post-conviction motions, and the Third Circuit found that the defendant and his attorney, impliedly waived the twenty-four hour delay by their active participation in the sentencing hearing.
In this case, defense counsel assisted the judge at the sentencing hearing by providing the sentencing ranges for the crimes for which the defendant was convicted:
JUDGE: Unauhtorized entry is zero to—
DEFENSE COUNSEL: Six, Your Honor.
* * *
JUDGE: And on the aggravated battery?
DEFENSE COUNSEL: Zero to ten, Your Honor.
Following the above exchange, defense counsel argued his motion for reconsideration of sentence:
... the sentence is excessive in light of the Eighth Amendment of the Unites States Constitution as well as Article I, Section 20, of the State of Louisiana Constitution that Article 894.1 of the Code of Criminal Procedure was not considered in giving the sentence that [the defendant] was found minimally culpable of all the counts against him in the original Bill of Information and the verdict returned by the jury as well as the fact that [the defendant] is a first felony offender in this matter.
It appears that the trial judge considered defense counsel’s arguments because she sentenced the defendant to less than the maximum sentences allowed Infor the two convictions. Moreover, judging by the court’s comments, it does not appear that the sentence was imposed hurriedly or without due consideration:
Let the record reflect that the Court indeed and in fact considered the Constitution, the Bill of Rights, the Code of Criminal Procedure, as well as criminal law. Let the Record reflect that based upon the nature and circumstances of this case, and the jury finding, i.e., number one, that [the defendant] broke into an individual’s residence and then two or three months later, having been charged with the offense, then grabbed D.J. on the streets of the City of New Orleans and begun to attack her with a flat-headed screwdriver. The Court’s considered all of that.
Considering the foregoing, we conclude that the defense impliedly waived the statutory delay, and that the defendant is unable to show any prejudice from the trial court’s failure to observe the twenty-four hour delay.
*1138 The second error patent pertains to the defendant’s sentence for aggravated battery. The transcript indicates that the judge imposed sentence without benefit of probation or suspension of sentence. However, the penalty provision of the substantive statute does not authorize such a restriction. La. R.S. 14:34. La.C.Cr.P. art. 882(A) provides that an appellate court on review may correct an illegal sentence at any time. Accordingly, we amend the defendant’s sentence by deleting the restriction that defendant serve his sentence without benefit of probation or suspension of sentence.

ASSIGNMENT OF ERROR NUMBER 1

By this assignment, the defendant argues the trial court erred in denying his motion for mistrial based upon inadmissible other crimes evidence in the State’s happening statement and its solicitation of bad character testimony in its case in chief.
During opening statement, the State commented:
One month prior to this, a long relationship with William Coleman ended. It ended for several reasons, one of which was a drug problem. And there were a lot of other things, and you’ll hear from (inaudible) Joseph, that that was one of the reasons.
He was kicked out of the house, the house on Duplessis Street, in the St. Bernard Housing Development. She couldn’t take it anymore, all the things that were going on, the drug use, and some other things that go along with drug use.
The defense counsel objected but his objection was overruled. He did not move for mistrial.[3]
The other instance to which the defendant objects occurred during D. J.’s testimony on direct examination:
Prosecutor: Why did you kick him out?
D. J.: The relationship was gone. I kicked him out because of drugs and other women.
The defense objected to the foregoing exchange on the basis of C.E. art. 404, inadmissible character evidence, and moved for mistrial.
La.C.Cr.P. art. 770(2) provides:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
[[Image here]]
113(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
Pursuant to Article 770, a mistrial is required when the prosecutor refers to other crimes by the defendant as to which evidence is not admissible. However, as noted in State v. Robinson, 00-1050, (La.App. 4 Cir. 4/11/01), 784 So.2d 781, 794, “a mistrial is a drastic remedy which should be granted only when the defendant suffers such substantial prejudice that he has been deprived of any reasonable expectation of a fair trial. See State v. Berry, 95-1610, (La.App. 1 Cir. 11/8/96), 684 So.2d 439, 449 writ denied, 97-0278 *1139 (La.10/10/97), 703 So.2d 603.” The determination of whether actual prejudice has occurred, and thus whether a mistrial is warranted, lies within the sound discretion of the trial judge, and this decision will not be overturned on appeal absent an abuse of that discretion. State v. Wessinger, 98-1234 (La.5/28/99), 736 So.2d 162,183.
An improper reference to other crimes is subject to the harmless error rule for purposes of appellate review. State v. Robinson, supra. A reviewing court may declare an error harmless beyond a reasonable doubt if it finds the verdict actually rendered in the trial was surely unattributable to the error. Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993): State v. Vale, 96-2953 (La.9/19/97), 699 So.2d 876, 877.
Article 404(A) of the Louisiana Code of Evidence states, in pertinent part, “Evidence of a person’s character or a trait of his character, such as a moral quality, is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion..., ”
In this case, the prosecutor’s reference to the defendant’s drug use in opening argument was in violation of La.C.Cr. P. art. 770(2). Likewise, D. J.’s | ulater reference to the defendant’s drug use violated C.E. art. 404. However, neither of the objectionable remarks prejudiced the defendant so as to deprive him of any reasonable expectation of a fair trial. The defendant testified, and confirmed that he smoked marijuana. Given the defendant’s admission, and the overwhelming evidence of his guilt, it is highly unlikely the other crimes comment and testimony played a part in the defendant’s conviction. This assignment is without merit.

ASSIGNMENT OF ERROR NUMBER 2

In a second assignment, the defendant claims that the evidence was insufficient to sustain his conviction for unauthorized entry of an inhabited dwelling.
La. R.S. 14:62.3 defines unauthorized entry of an inhabited dwelling as “the intentional entry by a person without authorization into any inhabited dwelling or other structure belonging to another and used in whole or in part as a home or place of abode by a person.” See State v. Cojoe, 2000-1856 (La.App. 4 Cir. 3/21/01), 785 So.2d 898, writ den. 2001-1143 (La.3/22/02), 811 So.2d 921.
The defendant argues the evidence was insufficient to support the conviction given the fact of his ten-year on-again/off-again relationship with D. J.. He also points out that he and D.J. lived in the apartment with their son, he still had belongings stored there, there was no restraining order against him, and D.J. did not change the locks after he left.
The standard for reviewing a claim of insufficient evidence is whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact after could have found the essential elements of the offense proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Hawkins, 96-0766 (La.1/14/97), 688 So.2d 473. The reviewing court is to consider the record as a whole and not just the evidence most favorable to the prosecution; and if rational triers of fact could disagree as to the interpretation of the evidence, the rational decision to convict should be upheld. State v. Mussall, 523 So.2d 1305 (La.1988). Additionally, the court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence. Id. The trier of fact’s determination of credibility is not to *1140 be disturbed on appeal absent an abuse of discretion. State v. Cashen, 544 So.2d 1268 (La.App. 4 Cir.1989).
In this case, D.J. denied giving defendant permission to enter the dwelling, contrary to the defendant’s claim otherwise. As for the defendant’s argument concerning the absence of a restraining order, Officer Corey Robinson testified that he responded to a domestic disturbance complaint at D. J.’s apartment in November 2000, prior to D. J.’s November 24, 2000, rape complaint. At that time he answered the domestic disturbance call, Officer Robinson told the defendant to leave the apartment, and advised him that if he wanted to return to gather his belongings, a police officer would have to be present. Officer Duane Corkum’s testimony that D. J.’s assailant gained entry into the apartment through a broken rear window in D. J.’s apartment described physical evidence of an illegal entry. The jury had a reasonable basis to conclude that the defendant committed an unauthorized entry. This assignment is without merit.

ASSIGNMENT OF ERROR NUMBER 3

In this assignment, the defendant argues he was denied the right to present a defense because the trial court refused to allow his two rebuttal witnesses to testify.
La.C.Cr.P. art. 764 states that the exclusion of witnesses is governed by La. C.E art. 615 which mandates that, upon request of a party, the court shall order the witnesses excluded from the courtroom or from a place where they can see or hear the proceedings, and refrain from discussing the facts of the case with anyone other than counsel in the case. The resolution of sequestration problems is within the sound discretion of the trial court. Rhone v. Boh Brothers, 2001-0270 (La.App. 4 Cir. 12/12/01), 804 So.2d 764 citing State v. Miller, 95-857, (La.App. 3 Cir. 1/31/96), 670 So.2d 420, 431.
In this case, two of the defendant’s witnesses, Paulette Brown and Earline Coleman, were not present on the first day of trial when the court ordered the sequestration of witnesses. The two witnesses attended the second day while trial was in progress, after D.J. had testified. Out of the presence of the jury, the trial judge entertained argument on the sequestration violation. Defense counsel explained that originally, he intended to call only the defendant to testify. However, he claimed that the character evidence presented by D.J. prejudiced the defendant thereby compelling defense counsel to call rebuttal witnesses. Defense counsel anticipated that Ms. Brown’s and Ms. Coleman’s testimonies would refute the allegation that the defendant used drugs, and verify the defendant’s assertion that he had authority to enter D. J.’s home on November 24, 2000. The trial judge found no deceit or willfulness in the violation of the sequestration order, but prohibited Ms. Brown and Mr. Coleman’s testimony.
The purpose of the rule of sequestration is “to prevent witnesses from being influenced by the testimony of earlier witnesses” and “to strengthen the role of cross-examination in developing the facts.” State v. Chester, 97-2790 (La.12/1/98), 724 So.2d 1276.
117In examining sequestration violations, the reviewing court considers the facts of each case to determine whether or not prejudice resulted. Further, a violation of the sequestration order does not warrant a mistrial absent an indication that the infraction materially prejudiced the defendant. State v. Barber, 30, 019 (La.App. 2 Cir. 1/21/98), 706 So.2d 563.
In this case, neither Ms. Brown nor Ms. Coleman was a fact witness to either the November 24, 2000, or the Janu *1141 ary 3, 2001, incident. Their testimony on rebuttal would have been to deny that the defendant used drugs, to contradict D. J.’s testimony that the defendant’s entry into her apartment was unauthorized, and to explain D. J.’s alleged bias against the defendant.
The exclusion of Ms. Brown’s and Ms. Coleman’s testimony denying drug use by the defendant did not prejudice the defendant because he testified at trial and admitted using marijuana.
As for the unauthorized entry issue, under cross-examination the prosecution posed the question:
Q. Did [D.J.] give you permission to be in her home on the 24th?
A. —did she give me permission to come to her house? No, she didn’t give me specific reason to come to her house on the 24th. No.
Finally, as to D. J.’s alleged bias against the defendant, bias is not a defense to unauthorized entry of an inhabited dwelling or aggravated battery. Moreover, the defendant presented his bias argument to the jury during his testimony. Hence, additional testimony on the issue would have been cumulative.
The defendant was not prejudiced by the lack of the rebuttal testimony because it was not critical to his defense. It does not appear that the trial judge |18abused her discretion by barring the testimony of the rebuttal witnesses. This assignment is without merit.

ASSIGNMENT OF ERROR NUMBER 5

In his final assignment, the defendant maintains his sentences are excessive.
Article I, Section 20 of the Louisiana Constitution of 1974 provides that “No law shall subject any person ... to cruel, excessive or unusual punishment.” A sentence within the statutory limit is constitutionally excessive if it is “grossly out of proportion to the severity of the crime” or is “nothing more than the purposeless imposition of pain and suffering.” State v. Caston, 477 So.2d 868, 871 (La.App. 4 Cir. 1985). Generally, a reviewing court must determine whether the trial judge adequately complied with the sentencing guidelines set forth in La.C.Cr.P. art. 894.1 and whether the sentence is warranted in light of the particular circumstances of the case. State v. Soco, 441 So.2d 719, 720 (La.1983); State v. Quebedeaux, 424 So.2d 1009, 1014 (La.1982).
If adequate compliance with article 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of his case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. Quebedeaux, 424 So.2d at 1014; State v. Guajardo, 428 So.2d 468, 473 (La.1983).
However, in State v. Major, 96-1214 (La.App. 4 Cir. 3/4/98), 708 So.2d 813, this Court stated:
The articulation of the factual basis for a sentence is the goal of Art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an Inadequate factual basis for the sentence imposed, resentencing is unnecessary even when there has not been full compliance with Art. 894.1. State v. Landos, 419 So.2d 475 (La.1982). The reviewing court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. La.C.Cr.P. art. 881.4(D).
708 So.2d at 819.
The defendant in this case faced a sentencing range of up to six years, with or without hard labor, and the possibility of a one thousand dollar fine for the unauthorized entry of an inhabited dwelling conviction. The court sentenced him to four years at hard labor. For the aggravated battery conviction, the defendant was sub *1142 ject to a fine of five thousand dollars and up to ten years, with or without hard labor. The court sentenced him to nine years at hard labor without benefits.
The defendant contends the trial judge failed to comply with the guidelines set forth in La.C.Cr.P. art. 894.1 and that the sentences imposed are in the upper range, while the circumstances of the offense are not particularly egregious.
In State v. Soraparu, 97-1027 (La.10/13/97), 703 So.2d 608, the Louisiana Supreme Court, held:
On appellate review of sentence, the only relevant question is “ ‘whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.’” For legal sentences imposed within the range provided by the legislature, a trial court abuses its discretion only when it contravenes the prohibition of excessive punishment in La. Const, art. I, S 20, i.e., when it imposes “punishment disproportionate to the offense.” In cases in which the trial court has left a less than fully articulated record indicating that it has considered not only aggravating circumstances but also factors militating for a less severe sentence, a remand for resentencing is appropriate only when “there appear[s] to be a substantial possibility that the defendant’s complaints of an excessive sentence ha[ve] merit.”
I anln sentencing the defendant, the trial judge noted:
Let the record reflect that this is a crime of violence.
[[Image here]]
Let the record reflect that the Court indeed and in fact considered the Constitution, the Bill of Rights, the Code of Criminal Procedure, as well as criminal law. Let the record reflect that based upon the nature and circumstances of the ease, and the jury finding, i.e., number one, that Mr. William Coleman broke into an individual’s resident and then two or three months later, having been charged with the offense, then grabbed D.J. on the streets of the City of New Orleans and begun (sic) to attack her with a flat-headed screwdriver. The Court’s considered all of that.
Tragically, D. J.’s eight-year old son witnessed his father’s brutal attack on his mother. D. J.’s mother saw her daughter suffer at the hands of the defendant. Undeniably, D. J.’s family will live with those horrible memories for the rest of their lives. The trial court’s reasoning and the facts of this case adequately support the sentences imposed. This assignment is without merit.

CONCLUSION

We affirm the convictions. We amend the aggravated battery sentence by deleting the restriction that defendant serve his sentence without benefit of probation or suspension of sentence.

AFFIRMED AS AMENDED.

. Although the defendant was acquitted of the rape charge, this case involves a sex crime, therefore only the initials of D.J. and her family members will be used herein.

. At this point in D. J.’s testimony, the State played the tape of D. J.'s 911 call for the jury.

. A failure to move for a mistrial is a waiver of the error since C.Cr.P. art 770 requires a motion by the defendant. Comment (b) to art. 770. However, when a defendant objects, and the objection is overruled, the defendant is not required to move for an admonition or mistrial to preserve his rights on appeal. State v. Baylis, 388 So.2d 713 (La.1980).