J^MOON LANDRIEU, Judge Pro Tempore.
STATEMENT OF THE CASE
On April 30, 2002 the State filed a bill of information charging the defendant-appellant with one count of possession of cocaine with the intent to distribute, a violation of La. R.S. 40:967(A)(1), and one count of possession of heroin with the intent to distribute, a violation of La. R.S. 40:966(A)(1). The defendant pled not guilty to both counts at his arraignment on May 3, 2002. On May 15, 2002 the court heard and denied the defendant’s motion to suppress evidence. Trial began on October 29, 2002; after a one-day recess, trial concluded on October 31, 2002 when the twelve-person jury returned verdicts of guilty as charged on both counts. On November 21, 2002 the trial court denied motions for new trial filed by the defendant pro se and by counsel. On November 22, 2002 the court sentenced the defendant to serve twenty years at hard labor on each count to run concurrently with each other and any other sentences, with credit for time served.[1] The court denied the defendant’s motion to reconsider sentence and granted his motion for an appeal. The State filed a multiple bill charging defendant with being the same person who pled guilty to the crime of aggravated battery in 121990, possession of cocaine in 1986 and manslaughter in 1992. The trial court denied defendant’s motion to quash the multiple bill of information. The hearing on the multiple bill of information has been continued. After the appeal record was lodged in this Court, counsel moved to supplement the record with the motion hearing transcript, which was done on May 1, 2003. After counsel filed a brief, the appellant pro se moved to file a supplemental brief. That motion was granted, and on June 18, 2003 the record was sent to defendant, who has not filed a pro se brief as of this date, although he has unsuccessfully sought to supplement the record with the tape recording of the motion hearing and his trial attorney’s file.

*591
STATEMENT OF THE FACTS

The New Orleans Police Department (“NOPD”) received complaints about narcotics violations in the area of LaSalle and Josephine Streets. On April 15, 2002 at approximately 7:15 p.m., Officer Thedrick Andres took up a position from which he could view this intersection with binoculars. Officer Andres testified that the area was particularly well lit, like daytime. Other officers were in marked units farther away, in locations from which they could support the operation. Officer Andres saw a black male wearing a black shirt and blue jeans standing near the intersection. The subject, later identified as the defendant, attempted to flag down several vehicles, but initially none stopped. After a few minutes, a black truck pulled up by the defendant. The defendant approached the truck and engaged in a conversation with the driver. Officer Andres observed the defendant look around nervously, reach in the rear waistband of his pants, and extract what appeared to be a white paper napkin. From that' napkin the defendant removed a silver foil and handed it to the driver of the truck; the driver gave the defendant currency. The | ¡¡defendant then balled the white napkin back up, looked around again, and placed it back into the rear of his waistband. The truck then left the area.
Based on his experience, Officer Andres believed he had witnessed a drug transaction. Accordingly, he contacted his backup teams and asked Officer Louis Faust and his partner to conduct an investigatory stop of the Ford truck that was driving out of the area[2] and that Officers Mike Pierce and Kevin Newton stop the defendant. He provided a description of the defendant as a black male, around five feet six inches in height, wearing a black t-shirt and blue jeans. As the uniformed officers exited their marked vehicle, the defendant fled on foot. Although Officer Andres lost sight of the defendant as he ran around a corner, he did see the defendant reach into his rear waistband as he ran and communicated that observation to the officers pursuing the defendant.
Officer Faust made an in-court identification of the defendant as the person arrested.
Officers Pierce and Newton acted on Officer Andres’ request that the defendant be stopped. Officer Pierce testified that as they pulled up to the intersection, they exited their marked unit and identified themselves to the defendant as police officers. The defendant then ran, and they pursued him on foot, never falling more than twenty feet behind. They observed the defendant reaching into the back of his pants as he ran. When the defendant reached St. Andrew Street, he turned the corner, ran to the front of a Dodge Neon automobile, and discarded a white object by the right front tire. Officer Pierce was able to apprehend the defendant a few steps away when the defendant stumbled. Officer Newton retrieved the object the defendant had discarded and discovered that it was |4a. white napkin yvrapped around several tin foils containing what appeared to the officers to be heroin and clear plastic bags containing powder that appeared to the officers to be cocaine. The defendant was arrested and searched. That search resulted in the seizure of a plastic bag containing green vegetable matter described by Officer Pierce as appearing to be marijuana, and approximately fifty dollars in cash.
Both Officers Pierce and Newton testified that the defendant was wearing a *592 black t-shirt and blue jeans when they apprehended him. From the scene of the arrest, they transported the defendant to the Sixth District station and then to Central Lock-up. The defendant did not change clothes from the time of the arrest to the time they delivered him to Central Lock-up. Officer Newton confirmed Officer Pierce’s testimony.
Corey Hall, a criminalist and expert in the testing and analysis of controlled dangerous substances, testified that he tested a white powder inside the plastic bags; the powder tested positive for cocaine. He tested powder that was wrapped in foil; it tested positive for heroin. A test of the seized vegetable matter was positive for marijuana.
The defendant testified on his own behalf. He stated that he was wearing a flowered shirt on the day in question. He identified the shirt in a photograph taken at Central Lock-up during the booking process. The defendant admitted that another photograph, a Polaroid, taken at Central Lock-up at the beginning of the booking process showed him in a black t-shirt without a flowered over shirt. He accounted for the change by testifying that, when Officer Andres wrestled him to |sthe ground, the officer placed the flowered shirt into the defendant’s back pocket.[3] The defendant further admitted that the photograph in which he was wearing the flowered shirt showed a maroon-colored shirt, not a black t-shirt, underneath. The defendant stated that the maroon shirt was a sweatshirt provided by the sheriffs office because the holding cell was cold, and he admitted that his black t-shirt was underneath the sweatshirt.
The defendant denied that he sold and possessed drugs. He said that he was in the area of Josephine and LaSalle Streets to visit an elderly relative who lived in the 2400 block of St. Andrew Street. He had first spent a little time playing dice with some old friends whom he knew because his mother used to live on Josephine Street. According to the defendant, as he was walking to his relative’s home, an officer appeared with his gun drawn and said, “Freeze. Don’t run.” The defendant said he ran because he had been shot the year before and was startled. Officer Andres tackled him, and then asked him who had run past. When the defendant said no one had, he was placed in the police car and arrested. He denied all knowledge of any of the drugs or of a drug sale. He did admit having pled guilty in prior cases to manslaughter, to possession of cocaine, and to having been a convicted felon in possession of a firearm.
To support his testimony that he was wearing a flowered shirt, the defendant presented the testimony of Major William C. Hunter of the Orleans Parish Sheriffs Office. Major Hunter testified that he is in charge of the intake booking in the Records and Release Divisions. He identified two bags of items, a valuable property bag and a clothing bag, which he matched to the defendant’s arrest by the folder number assigned at intake. The clothing bag contained one pair of black | rjeans and one partially black shirt.[4] The bag also contained a visor that was not reflected on the inventory attached to the bag.
Major Hunter testified during cross-examination that it was possible for an *593 inmate to change clothing with another inmate while in the holding cell. This admission is consistent with the testimony of Officer Newton. Major Hunter further testified that there were several steps in inmate processing. He identified defense exhibit VI, which is entitled “Suspect Rap Sheet” and contains the computerized photograph of the defendant in the black flowered shirt, as the identification step during which the inmate’s fingerprints are electronically sent to the State and a criminal history returned. In further testimony Major Hunter identified the Polaroid photograph of the defendant as having been taken during an earlier step in the booking process. The Polaroid was taken for the sheriffs office file. Major Hunter was unable to state what happened to the black shirt the defendant was wearing in the first photograph; it was not in the clothing bag nor was it listed on the inventory.
The State called Officers Andres and Pierce on rebuttal. Officer Andres denied having physically apprehended the defendant or having tackled him on the ground. He testified that the defendant was not wearing the flowered shirt or a visor during the surveillance. Both officers stated that the defendant was never wearing a flowered shirt.

ERRORS PATENT

A review of the record for errors patent reveals none.
I ^ASSIGNMENT OF ERROR: The trial court should have allowed defense witness, Ladrine Day, to testify at trial.
The appellant admits that Ms. Day violated the trial court’s sequestration order in effect during the trial.
Exclusion of witnesses is governed by La. C.E art. 615 which mandates that, upon request of a party, the court shall order the witnesses excluded from the courtroom or from a place where they can see or hear the proceedings, and refrain from discussing the facts of the case with anyone other than counsel in the case. La.C.Cr.P. art. 764. “The resolution of sequestration problems is within the sound discretion of the trial court.” State v. Coleman, 2002-1000, p. 16 (La.App. 4 Cir. 9/25/02), 828 So.2d 1130, 1140. This Court noted:
The purpose of the rule of sequestration is “to prevent witnesses from being influenced by the testimony of earlier witnesses” and “to strengthen the role of cross-examination in developing the facts.” State v. Chester, 97-2790 (La.12/1/98), 724 So.2d 1276.
In examining sequestration violations, the reviewing court considers the facts of each case to determine whether or not prejudice resulted. Further, a violation of the sequestration order does not warrant a mistrial absent an indication that the infraction materially prejudiced the defendant. State v. Barber, 30,019 (La. App. 2 Cir. 1/21/98), 706 So.2d 563.
Coleman, pp. 16-17, 828 So.2d at 1140.
In Coleman, as in the instant case, the sequestration order was given at the beginning of the first day of trial. The violation of the sequestration order by the defense witnesses occurred on the second day of trial. The trial court found that the defense witnesses, whom the defendant wished to call to rebut an allegation that he used drugs, did not willfully or deceitfully violate the court’s sequestration order. Nevertheless, they were not permitted to testify. On appeal, this Court found no abuse of the trial court’s discretion because the defendant during his own testimony admitted using marijuana.
*594 | ¡¡Here, the defendant attempted to call Ladrine Day to testify after the State had concluded its case and two defense witnesses had testified. The State objected, noting that she was present when the State’s first two witnesses testified that morning; it is unclear whether Ms. Day was also present when the defense witnesses testified. A recess was called, and the parties retired to chambers. When they returned, the judge informed the jury that the defendant’s witness had been excused because she was present in court when other witnesses testified. The court explained the purpose of the sequestration rule and admonished the jury that the disqualification of the witness should not be considered as an adverse reflection on either the State or the defense. The defense counsel did not object on the record to the disqualification of the witness or the trial judge’s admonition.
La.C.Cr.P. art. 841[5] precludes review of an alleged error for which there was no contemporaneous objection. This issue was not preserved for review. We note that defense counsel made no proffer on the record of the nature of Ms. Day’s expected testimony, nor did he object to the court’s refusal to allow her to testify.
The failure to make a proffer was a factor in State v. Watson, 02-1154 (La. App. 5 Cir. 3/25/03), 844 So.2d 198, the case upon which the appellant relies to support his argument that he has a constitutional right to present witnesses. The court there stated:
In State v. Jones, 354 So.2d 530, 532 (La.1978), the Louisiana Supreme Court explained:
Although our jurisprudence allowing trial judges to 19enforce sequestration pursuant to La.C.Cr.P. art. 764 by excluding testimony of disobedient witnesses does reflect a legitimate state interest in preventing testimonial influence that interest is not sufficient to override the defendant’s rights to have compulsory process and to present a defense under either the federal or the state constitution.
The exclusion of a witness is a disfavored sanction, absent a showing that the sequestration violation occurred with the consent, connivance, procurement or knowledge of the party or his counsel for whom the witness was to testify. Warren, 437 So.2d at 840.
In the present case, the trial court excluded the testimony of Latasha Dabney because she had been present during the testimony of the defendant. Her presence in the courtroom was known to defense counsel, who had previously advised Dabney he would not need her testimony. Because the violation of the sequestration order occurred with the consent and knowledge of defense counsel, the exclusion of Dabney’s testimony was within the trial court’s discretion.
Further, defense counsel never stated on the record the substance of *595 Dabney’s testimony and never proffered her testimony pursuant to La. C.E. art. 103. Therefore, the record does not reflect whether Dabney was in a position to offer testimony that might have substantially helped the defense and the defendant failed to preserve the excluded testimony for appeal by failing to proffer the evidence. See, State v. Searcy, 621 So.2d 83, 87-88 (La.App. 2 Cir. 6/23/93).
State v. Watson, pp. 20-21, 844 So.2d at 211. (Footnotes omitted.)
Trial counsel in the instant case never proffered Ms. Day’s testimony on the record.[6] Appellate counsel avers that Ms. Day is the defendant’s common-law wife and would have testified that he was wearing the flowered shirt earlier in the day. This statement of expected testimony can be found in the defendant’s pro se |inmotion for new trial wherein he averred further that his counsel should have discovered and presented the testimony of several witnesses who would have established that Ms. Day and he were together shopping throughout the day. The defendant stated that the stores they visited would have surveillance tapes that would have depicted him wearing the flowered shirt. Notably, however, the defendant in this motion does not aver that Ms. Day was with him at the time of his arrest, nor does he list any witnesses who would have testified that he had the shirt on at the time he was at the intersection of Josephine and LaSalle Streets.
During his testimony, the defendant admitted that he had a black t-shirt on under the flowered shirt; he did not dispute that he was photographed at Central Lock-up without the flowered shirt on before he was photographed with it on. Ultimately, whether he was wearing the flowered shirt earlier in the day does not eliminate the possibility that he had removed it at the time of the incident. The defendant himself contended that the shirt was placed in his back pocket by one of the officers. Arguably the defendant could have done so himself, prior to engaging in the drug activity, for the specific purpose of confusing his identity later.
Even assuming that the issue of Ms. Day’s disqualification was preserved, the defendant was not prejudiced by the court’s refusal to allow her to testify that the defendant was wearing a flowered shirt over a black t-shirt earlier in the day. This assignment lacks merit.

CONCLUSION

For the foregoing reasons, we affirm the defendant’s convictions and sentence.

AFFIRMED.

. The defendant was also sentenced on a marijuana charge.

. At trial, Officer Louis Faust testified that he and his partner were the team who attempted to stop the truck. He stated that they were unsuccessful in locating it.

. The defendant repeatedly testified that it was Officer Andres who apprehended him even though all of the police witnesses testified that Officer Andres was the officer who was conducting the surveillance and was not on the takedown team.

. The defendant was allowed to dress in the clothing prior to testifying to show that the items fit him.

. La.C.Cr.P. art. 841 provides:
A.An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.
B. The requirement of an objection shall not apply to the court's ruling on any written motion.
C. The necessity for and specificity of evidentiary objections are governed by the Louisiana Code of Evidence.

. Appellate counsel alternatively argues that this case be remanded for a hearing on the content of Ms. Day’s testimony and whether her violation of the sequestration order was with the knowledge or connivance of defense counsel, citing State v. Jones, 354 So.2d 530 (La.1978). However, in Jones defense counsel's request to proffer the testimony had been denied. Furthermore, the witness at issue had been subpoenaed by the State, and it was not until after trial commenced that defense counsel learned the witness may have testimony favorable to the defendant and sought to subpoena him as a defense witness. The State objected on the grounds that its own subpoenaed witness had violated the sequestration order. The Jones case appears to be distinguishable from the instant case.