WINDHORST, J.
Defendant, Richard Justin Benoit, appeals his convictions of sexual battery (count one) and attempted aggravated incest (count two). For the reasons that follow, we affirm defendant's convictions and sentence on count one; vacate defendant's sentence on count two and remand for resentencing on count two.
Facts and Procedural History
Defendant was indicted by a grand jury on May 8, 2012, and charged with aggravated rape of a minor, L.B.,[1] under the age of thirteen, in violation of La. R.S. 14:42(4)[2] (count one) and with aggravated incest of L.B, in violation of La. R.S. 14:78.1[3] (count two).[4] Defendant pled not guilty on June 20, 2012.
On April 7, 2014, after a four day trial, a twelve-person jury found defendant guilty of the responsive verdicts of sexual battery on count one and attempted aggravated incest on count two. On July 30, 2014, defendant filed a motion for post-verdict judgment of acquittal and a motion for new trial, which were denied by the trial court. Defendant was sentenced to fifty years at hard labor with thirty-five years without the benefit of parole, probation, or suspension of sentence on count one and forty-nine and one-half years on count two, to be served concurrently.[5] Defendant *1217 filed a motion to reconsider sentence, which was denied by the trial court on August 29, 2014. On September 25, 2014, defendant filed a motion for appeal, which was granted by the trial court on September 26, 2014. This appeal followed.
On February 29, 2012, Detective Walter Banks, a juvenile detective with the St. Charles Parish Sheriff's Office, met with J.A., the mother of the victim, L.B., regarding a complaint of child sexual abuse. He spoke with J.A. and L.B. individually. J.A. stated that L.B. told her that L.B.'s dad, defendant, touched her inappropriately and tried to have sex with her four times. L.B., who was eight years old at the time, disclosed that she was sexually abused by her father. L.B. stated that defendant tried to "stick his...private part" in her "private part,"[6] however, he was not successful because she "squeeze[ed]" her "butt." Her dad also watched a video on his cell phone[7] to see how he could "do it." She told the detectives that her "dad has sex problems." He told her that he could not go to sleep without it. She was scared to tell anyone because defendant told her if she ever told anyone, the police would be called, and they would "slit off his neck." She stated that this occurred four times, and he "touched her everywhere with his private." One time, he put green dish soap on his private to "make it slippery" to "try to stick it in easier," but was unsuccessful. She explained that this happened when she stayed with her dad, his ex-wife, J.B., and the three boys at his trailer.[8]
At trial, J.A. testified that these allegations by L.B. were brought to her attention in January 2012 when L.B. protested visiting with her dad on his weekend. L.B. told her that she did not want to go because her dad was touching her. After this disclosure, J.A. spoke with J.B., defendant's ex-wife, who currently lived with defendant, and they confronted defendant about the allegations. J.A. testified that defendant denied the allegations, but after specific details provided to J.B. by L.B. were revealed, he "second-guessed" himself. She did not initially call the police because she did not want her daughter's name "slandered out over St. Charles Parish." However, she ultimately contacted the police.
At the time of trial, L.B. was ten years old and testified that when she was six or *1218 seven, her dad would come home from the bar and move her from where she was asleep on the sofa to her room and "sexually abuse" her. Her dad would remove her clothes and their "privates" touched. L.B. explained that his "private" was "between my legs." He told her that he "needed to do that or he couldn't go to bed." His private did not go all the way in her "tu-tu." His private also went by her "butt," but it did not go in there either. L.B. stated that this happened four or five times. She testified that he put green soap that smelled like green apples on his private part. She did not tell anyone because she "loved him at that point," and he told her that if she said anything, they would "chop off his head." She finally told her mom what happened because her "dad got his own apartment, and I was afraid that he was going to do it day and night."
Anne Troy, a nurse practitioner at Children's Hospital who was qualified as an expert in pediatric forensics, specializing in child maltreatment, including physical and sexual abuse, testified that she conducted a forensic evaluation of L.B. on March 5, 2012. Ms. Troy stated that L.B. provided a spontaneous, detailed disclosure of abuse. In explaining what happened to her, L.B. did not "pause as if remembering something that she was told to say," and Ms. Troy diagnosed sexual abuse. Ms. Troy further stated that L.B. presented with other non-specific behavioral issues, including urinary control problems, mood swings, weight changes, eating problems, and loss of energy, that are symptoms that "would be consistent with sexual abuse."
After speaking with J.A. and L.B., Detective Banks obtained a search warrant for defendant's current apartment and the trailer home where he lived when the incidents occurred. Detective Banks also prepared an arrest warrant for defendant, which was executed at the same time as the search warrant. Defendant was arrested at his apartment, where he was Mirandized, and agreed to speak with Detective Banks. Defendant stated that the only time he "touched" his daughter was to help her "wipe herself" after using the bathroom. In his initial statement, defendant voluntarily acknowledged that he had a self-diagnosed "sex addiction" and a "drinking problem." He stated he could not go to sleep if he did not have sex. He admitted that on five or six occasions, after a night of drinking, he found himself at home but could not remember what happened or how he had gotten home. He conceded that on one of these occasions the allegations made by L.B. "could have happened." Once defendant was transported to the jail, defendant gave another statement. In his second statement, defendant said, "I definitely don't think she would lie about all that, not that detailed." He reiterated that he believed his daughter, which is why he stated that "there's definitely that possibility that I, .. I could have."
Defendant testified at trial that he never sexually abused or touched L.B. inappropriately. He first learned about these allegations in February 2012, when he was confronted by J.A. and J.B. On the five or six occasions he told police that he was drinking and had no knowledge of what happened, L.B. had only stayed with him for one of those times. When further confronted with his acknowledgment of how the abuse could have happened, he testified that he only said what he thought he should say so he could go back to his cell. When he was brought to the jail, he was placed on suicide watch and put in paper clothes. The interview room was cold and he was "ready to get out of the room"
*1219 because he was "tired of discussing this with them."
J.B. testified on behalf of defendant. She stated that while she initially believed L.B. about the allegations, the more she thought about it, "stuff didn't really start falling in place" and believed that "it couldn't have happened on those days" alleged by L.B.
On rebuttal, the State called Shakira Herbert, a child welfare specialist with the Department of Children and Family Services, who testified that she investigated this case and spoke with defendant regarding the allegations. Defendant spoke with her willingly and told her that while he did not remember being sexually inappropriate with L.B., "when he was wasted, it could be possible."
Discussion
In his first assignment of error, defendant argues that the trial court erred in failing to make a determination that the victim in this case, L.B., was competent under La. Code of Evidence art. 601. He contends that a child, like any other witness, must be shown to have "proper understanding," and during the short colloquy between the trial court and L.B. before her testimony, the trial court failed to make this determination.
The record shows that before L.B. was sworn in, the trial court engaged in a short colloquy with her. In the colloquy, the trial court asked L.B. questions about her age, where she went to school, her favorite school subject, and the importance of telling the truth. After this colloquy, L.B. was sworn in and testified regarding the subject matter of this case. At no point either before the colloquy, at the time of her testimony, or after her testimony concluded, did defendant challenge L.B.'s competency to testify. Defendant first raised this issue in his motion for new trial, wherein he argued that there was no determination of L.B.'s competency as required by La. C.E. art. 601. The trial court denied the motion.
In order to preserve the right to seek appellate review of an alleged trial court error, the party alleging the error must state an objection contemporaneously with the occurrence of the alleged error, as well as the grounds for that objection. La. C.Cr.P. art. 841 ; State v. Gaal, 01-376 (La. App. 5 Cir. 10/17/01), 800 So.2d 938, 949, writ denied, 02-2335 (La. 10/03/03), 855 So.2d 294. The purpose of the contemporaneous objection rule is to put the trial judge on notice of an alleged irregularity, allowing him the opportunity to make the proper ruling and correct any claimed prejudice to the defendant, procedural irregularity, or evidentiary mistake. Id.
Further, a defendant is limited to the grounds for objection that he articulated in the trial court, and a new basis for the objection may not be raised for the first time on appeal. State v. Taylor, 04-346 (La. App. 5 Cir. 10/26/04), 887 So.2d 589, 594. While competency was raised in his post-trial motion for new trial, because there was no timely objection made as to L.B.'s competency before, during, or after her testimony articulating the grounds for his objection, this issue was not properly preserved for appeal.
In his second assignment of error, defendant argues that the trial court erred in not granting his motion for mistrial after the State inappropriately referred to an inculpatory statement by defendant during opening arguments. Pursuant to La. C.Cr.P. art. 767, the State was prohibited from making any reference in its *1220 opening statement to a confession or inculpatory statement unless the statement had been previously ruled admissible. Defendant contends that the State had a duty to show that the statement was made freely and voluntarily. He argues that under the clear reading of La. C.Cr.P. art. 767, reference to it by the State during opening statements prior to the statement being admitted was prejudicial to defendant.
After voir dire , the State formally filed its notices stating that all statements were provided in discovery and no motions challenging the admissibility of the statements were filed by defendant. The State further argued that because defendant did not file a pretrial motion to suppress his confession, any objection was waived pursuant to La. C.Cr.P. art. 703. The State then requested the trial court to "take notice and grant the motions." Defendant argued that he could not object to the notices because the State had not moved to introduce the statements into evidence. The trial court declined to grant the introduction of the statements into evidence, but allowed the notices to be filed into the record. When specifically asked by the trial court if he intended to object to the State alluding to defendant's statements in its opening statement, defense counsel responded "No. I can't."[9] The trial court found that defendant's statements could be alluded to during opening statements, but no evidentiary rulings would be made at that time.
During opening statements, the State referred to defendant's statement, as follows:
You're also going to hear from the Defendant. He talks to the police. He gives his statement to the police, and he tells them: Well, I don't think I did it, but if I did, it's when I was drinking, because I'm a sex addict. I have a severe sex addiction. I need help. I need to go to the same place Tiger Woods went. You're going to hear that.
You're also going to hear him telling the police: I think she's telling the truth. Y'all need to get my daughter help. I don't think she would lie about this. With my addiction, I think it's possible that I did this when I was drinking.
Following these remarks, defendant moved for a mistrial pursuant to La. C.Cr.P. art. 767. He argued that because he did not file a motion to suppress, there was no ruling as to the admissibility of the statement and claimed that the notices filed in court did not give the State the authority to reference the statement during opening statements. In his argument, defendant also referenced La. C.E. art. 404, claiming that the State improperly referred to defendant's sexual addiction problem. Defendant argued that the State improperly referred to his character or trait to show that he acted in conformity therewith. The State responded that it filed all the proper notices and the statements were previously provided in discovery. The State argued that defendant waived his objection to the admissibility of the statement on any grounds that could be raised in a motion to suppress by not filing a motion to suppress. The State further argued that this was not character evidence, rather it was the defendant's own statements wherein he specifically talked about the crimes charged. Defense counsel responded that *1221 even though he did not file a motion to suppress, the State still had an obligation to prove that the statement was given freely and voluntarily.
The trial court denied the motion for mistrial, reasoning that defense counsel had notice, and that the purpose of the La. C.Cr.P. art. 767 prohibition was "not to be taken by surprise or prejudiced in preparing for your defense." The trial court further found that the statement was not character evidence used to prove that defendant acted in conformity with the character evidence. After defendant's opening statement in which defense counsel referenced the previously objected to statements, the trial court further instructed the jury that opening statements were statements by the attorneys and not evidence, and that the jury's determination of facts must be based on all the testimony and evidence admitted.
A mistrial is a drastic remedy and, except in instances in which a mistrial is mandatory, is warranted only when trial error results in substantial prejudice to a defendant, depriving him of a reasonable expectation of a fair trial. State v. Licona, 13-543 (La. App. 5 Cir. 05/21/14), 141 So.3d 333, 339. Whether a mistrial should be granted is within the sound discretion of the trial court, and the denial of a motion for mistrial will not be disturbed absent an abuse of discretion. State v. Lagarde, 07-123 (La. App. 5 Cir. 05/29/07), 960 So.2d 1105, 1113-14, writ denied, 07-1650 (La. 05/09/08), 980 So.2d 684.
La. C.Cr.P. art. 767 reads:
The state shall not, in the opening statement, advert in any way to a confession or inculpatory statement made by the defendant unless the statement has been previously ruled admissible in the case.
In State v. Lisotta, 97-407 (La. App. 5 Cir. 02/25/98), 712 So.2d 525, 527 the State in its opening statement said:
You're also going to hear from Deputy Kuhn that this defendant made several statements at the time that he was arrested denying certain things, saying things that the State intends to show, prove, that he's guilty, exactly what we say he's guilty of.
In Lisotta, defendant moved for a mistrial pursuant to La. C.Cr.P. art. 767 because any statements allegedly made by the deputy had not yet been deemed admissible. This Court found that the record showed that prior to trial, the State had filed a notice of its intent to use and introduce defendant's statements into evidence. This Court reasoned that the purpose of La. C.Cr.P. art. 767 is to prevent surprise and prejudice. Finding State v. Strickland, 683 So.2d 218 (La. 1996) controlling,[10] this Court found that because the deputy's statement was admitted during trial, the State's premature mention of the statement in its opening statement to the jury caused no prejudice. See also, State v. Roberts, 06-765 (La. App. 3 Cir. 01/17/07), 947 So.2d 208, 230 ; State v. Whitmore, 353 So.2d 1286, 1288-1289 (La. 1977).
Similarly, in this case, the record shows that the State filed a notice of its intent to use defendant's statements during opening statement and to introduce them into evidence and that defendant's statements were subsequently admitted into evidence *1222 at trial. We find that the State's premature mention of defendant's statements in the State's opening statement caused no real prejudice to defendant because the statements were later determined admissible at trial. Accordingly, the trial court did not abuse its discretion in denying the motion for a mistrial.
In his third assignment of error, defendant argues that the trial court erred by denying his motion for a mistrial. He contends that the two notes sent by jurors to the trial court prior to deliberations indicate that the jury began its deliberations prior to the State resting its case. He argues that this constituted a legal defect in the proceedings, warranting a mistrial. Defendant claims that his right to a fair trial was violated because the notes showed that the jury was discussing issues prior to the State resting, which is a direct violation of the trial court's instructions not to discuss the matter prior to the completion of the trial.
At the start of the fourth day of trial, before the State formally rested its case, two jurors sent individual notes to the trial court with questions: "Can we listen to the jail telephone call again?" and "Are transcripts allowed to review while we are in deliberation?" The State had not published all of the evidence to the jury yet, and a discussion out of the presence of the jury between the trial court, the State, and defense counsel was held regarding how these questions were to be addressed. Following this discussion, defense counsel moved for a mistrial arguing that a legal defect in the proceeding occurred based on the jury's failure to follow the instructions of the court to not discuss the case before deliberations. The State responded that there was no indication that the jury was discussing the case or deliberating in violation of the trial court's order. The trial court denied the motion.
Juror misconduct is not grounds for an automatic mistrial; prejudice must also be established. State v. Day, 414 So.2d 349, 350 (La. 1982). In any trial, there is a presumption of jury impartiality. United States v. Winkle, 587 F.2d 705, 714 (5th Cir. 1979), cert denied, 444 U.S. 827, 100 S.Ct. 51, 62 L.Ed.2d 34 (1979). Prejudice may be shown by evidence that an extrinsic factual matter tainted the jury's deliberations. Thus, an adequate demonstration of extrinsic influence upon the jury overcomes the presumption of jury impartiality and shifts the burden to the State to show that the influence demonstrated was not prejudicial. State v. Collins, 02-546 La. App. 5 Cir. 11/26/02), 833 So.2d 476, 478, writ denied, 03-0059 (La. 10/03/03), 855 So.2d 307.
In State v. Horne, 28,327 (La. App. 2 Cir. 8/21/96), 679 So.2d 953, 956, writ denied, 96-2345 (La. 02/21/97), 688 So.2d 521, after his conviction, defendant argued in a motion for new trial that "pre-deliberation discussion among the jurors, including the alternates, was equivalent to allowing the alternate juror to participate in deliberations resulting in an illegal procedure." Id. at 957. The court held,
[C]ommunications among jurors, although violating the trial court's instructions, do not amount to "outside influences" or "extraneous" information. The defendant alleges no fact suggesting that the jury based its verdict on prohibited factors such as coercion by a party, or inadmissible evidence of other crimes obtained from an out-of-court source.
Id. at 958. The court found that the trial court properly denied the defendant's motion for new trial and attendant request to *1223 examine the jurors because the intra-jury communications, if they took place, were not improper outside influences, extraneous prejudicial information, or objectively verifiable misconduct. Id. at 958. See also State v. Emanuel-Dunn, 03-0550 (La. App. 1 Cir. 11/07/03), 868 So.2d 75, 82, writ denied, 04-0339 (La. 6/25/04), 876 So.2d 829.[11]
In State v. Lewis, 05-170 (La. App. 5 Cir. 11/29/05), 917 So.2d 583, 597, writ denied, 06-0757 (La. 12/15/06), 944 So.2d 1277, the defendant argued that the alternate juror participated in pre-deliberation discussions which could have amounted to deliberations of defendant's guilt before the conclusion of the evidence. This Court found that even if such discussions took place, the alternate juror was not an outside source and such discussions were intra-jury communications only, and concluded that the trial court did not err in denying defendant's motion for new trial.
Based on the limited information in the record, we find any alleged intra-jury communications, if they took place, were not necessarily proven, and were not improper outside influences, extraneous prejudicial information, or objectively verifiable misconduct, and thus, the trial court properly denied the motion for mistrial.
In his fourth assignment of error, defendant argues that during the "entire trial," the State continuously alluded to character traits of defendant, such as his moral quality to show that he acted in conformity therewith. Defendant points to the reference made in the State's opening arguments that defendant was a "sex addict." Defendant also complains about the introduction of his statements given to police, which he argues were introduced to show that he acted in conformity therewith. He contends that a mistrial should have been granted after opening arguments of the State, and his objections to the admissibility of the statements should have been sustained.
Rule 2-12.4 of the Uniform Rules, Courts of Appeal, provides that the appellant's brief must contain "a specification or assignment of alleged errors relied upon, the issues presented for review, an argument confined strictly to the issues of the case, ...giving accurate citations of the pages of the record and the authorities cited[.]" The rule further states that the court "may consider as abandoned any specification or assignment of error which has not been briefed." Insofar as defendant's argument applies to alleged errors throughout the "entire trial," we find that this contention is vague, unsupported, not properly briefed, and is considered abandoned. However, defendant's argument referring to the alleged error with the State's opening statement and the admission of defendant's statements, while it does not provide specific citations from the record, does sufficiently allege fact-specific references from the record and as such, will be considered by this Court.
The State in its opening statement referred to defendant's statements wherein defendant stated that he was a "sex addict." Defendant moved for a mistrial, pursuant to La. C.Cr.P. art. 767, but also argued this reference violated La. C.E. art. 404 in that evidence of a person's character, such as moral quality, was not admissible for the purpose of proving that he acted in conformity therewith. The State responded that the purpose behind *1224 the introduction of the statement was not to prove conformity therewith; rather, the statement was defendant's "own statements talking specifically about this crime." The trial court denied the motion for mistrial.
Additionally, before defendant's statements were admitted into evidence, defense counsel objected based on La. C.E. art. 404 A, arguing improper use of character evidence to show that defendant acted in conformity therewith. He argued that the statement should have been redacted by the State to exclude those types of references. The State responded that defendant's statements about his sexual addiction and drinking problem were used to corroborate the victim's statement. The State maintained that defendant gave the statement voluntarily and volunteered this information. The trial court admitted the statements into evidence.
Article 404 A of the Louisiana Code of Evidence states, in pertinent part, "Evidence of a person's character or a trait of his character, such as a moral quality, is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion[.]"
At the outset, we note that defendant did not provide any specific legal authority to support his contention that a mistrial should have been granted based upon an alleged La. C.E. art. 404 A violation nor his contention that defendant's own statements should have been inadmissible based upon improper character evidence. Defendant generally cites La. C.E. art. 404 for the proposition that evidence of a person's character is not admissible in a criminal proceeding for proving that he acted in conformity therewith on a particular occasion and that any exception to this rule must be weighed by the court to determine if the probative value is outweighed by its prejudicial effect.[12]
In State v. Coleman, 02-1000 (La. App. 4 Cir. 09/25/02), 828 So.2d 1130, 1138, writ denied, 03-2533 (La. 09/24/04), 882 So.2d 1153, the defendant argued that the trial court erred in denying his motion for mistrial based upon inadmissible other crimes evidence in the State's opening statement and its solicitation of bad character testimony in its case in chief. The court found the State's reference to defendant's drug use in opening argument was in violation of La. C. Cr. P. art. 770 (2), and a witness's later reference to the defendant's drug use violated La. C.E. art. 404. However, the court found that neither of the objectionable remarks prejudiced the defendant so as to deprive him of any reasonable expectation of a fair trial. The defendant testified and confirmed that he smoked marijuana. Given the defendant's admission, and the overwhelming evidence of his guilt, the court found it highly unlikely that the other crimes comment and testimony played a part in the defendant's conviction.
Here, unlike in Coleman, in its opening statements, the State referred to defendant's admission that he was a "sex addict," not to any illegal activity that would be classified as other crimes evidence. Further, the alleged character evidence was not provided through testimony by a State witness but by admissions of defendant to the police in response to his daughter's allegations of sexual abuse. Defendant's statements explaining his self-diagnosed sexual addiction and drinking problem are an explanation as to how defendant *1225 may have perpetrated the acts alleged. As the State argued, the statements were introduced to corroborate the victim's statement. Moreover, the reference to the statements in the State's opening statement and the subsequent admission of those statements into evidence did not cause prejudice to defendant. The trial court did not err in denying the motion for mistrial, nor did it err in admitting defendant's statements into evidence.
Errors Patent Discussion
The record was reviewed for errors patent, according to the mandates of La. C.Cr.P. art. 920 ; State v. Oliveaux, 312 So.2d 337 (La. 1975) ; and State v. Weiland, 556 So.2d 175 (La. App. 5 Cir. 1990). The following errors patent require corrective action.
Defendant's sentence on count two is illegally lenient. On count two, defendant was convicted of attempted aggravated incest and was sentenced to forty-nine and one-half years imprisonment at hard labor. La. R.S. 14:78.1 D(2)[13] provided:
Whoever commits the crime of aggravated incest on a victim under the age of thirteen years when the offender is seventeen years of age or older shall be punished by imprisonment at hard labor for not less than twenty-five years nor more than ninety-nine years. At least twenty-five years of the sentence imposed shall be served without benefit of parole, probation, or suspension of sentence.
Further, La. R.S. 14:27 D(3) provided that for an attempt, a defendant
shall be fined or imprisoned or both, in the same manner as for the offense attempted; such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both.
Defendant's sentence was not imposed with restriction of benefits. The trial court did not mandate the length of time that defendant must serve without benefit of parole, probation, or suspension of sentence as mandated by La. R.S. 14:78.1 and La. R.S. 14:27. Because the language of the sentencing provision gives the trial court discretion in determining the exact length of time that benefits are to be restricted, we remand this matter for resentencing to impose at least twenty-five years of the sentence without benefits. See State v. Wilt, 14-823 (La. App. 5 Cir. 04/29/15), 170 So.3d 317, 327, writ denied, 15-1055 (La. 05/02/16), 206 So.3d 877.
Also, the record does not reflect that the trial court complied with La. R.S.14:78.1 E when sentencing this defendant for attempted aggravated incest. That statute provided as follows:
(1) In addition to any sentence imposed under Subsection D, the court shall, after determining the financial resources and future *1226 ability of the offender to pay, require the offender, if able, to pay the victim's reasonable costs of counseling that result from the offense . [Emphasis added.]
The record does not reflect that the trial court complied with this statute. Failure to comply with La. R.S. 14:78.1 E warrants a remand to ensure compliance with the statute. See State v. Perkins, 11-255 (La. App. 5 Cir. 11/29/11), 78 So.3d 860, 864 ; State v. Morgan, 06-529 (La. App. 5 Cir. 12/12/06), 948 So.2d 199, 214-15.[14] Therefore, the matter is remanded for compliance with La. R.S.14:78.1 E.
Conclusion
For the reasons stated above, defendant's convictions and sentence on count one are affirmed and his sentence on count two is vacated and remanded for resentencing.
CONVICTIONS AND SENTENCE ON COUNT ONE AFFIRMED; SENTENCE ON COUNT TWO VACATED; REMANDED FOR RESENTENCING ON COUNT TWO

The initials of the victim and those of certain family members are used under the authority of La. R.S. 46:1844 W(3), which allows the court to identify a crime victim who is a minor or a victim of a sex offense by using his or her initials. State v. Greene, 06-667 (La. App. 5 Cir. 01/30/07), 951 So.2d 1226, 1239, writ denied, 07-546 (La. 10/26/07), 966 So.2d 571.

La. R.S. 14:42 was subsequently amended in 2015 by Act No. 184, to rename the offense from aggravated rape to first degree rape.

Aggravated incest was redesignated by Acts 2014, No. 602, § 7 as aggravated crime against nature, La. R.S. 14:89.1.

The indictment was amended twice, once on July 10, 2013, where the initials of the victim were changed, and again on January 14, 2014, where the date of the offense was amended and defendant's middle name was added to the indictment. On both occasions, defense counsel waived a formal reading of the amended indictment and entered a plea of not guilty to the charges.

Although the minute entry reflects that the trial court ordered defendant's sentence on count two to be served with the Department of Corrections, the transcript reflects that the trial court did not state that the sentence was to be served with the Department of Corrections or at hard labor. Generally, when the transcript and commitment are inconsistent, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La. 1983). Nevertheless, because the underlying statute, La. R.S. 14:78.1, requires that the sentence be served at hard labor, allowing no discretion to the trial judge, the error is harmless and requires no corrective action. See State v. Tillery, 14-429 (La. App. 5 Cir. 12/16/14), 167 So.3d 15, 29, writ denied, 15-106 (La. 11/06/15), 180 So.3d 306.

L.B. stated that when she said her "private," she was referring to her "tu-tu" and not her "butt."

While defendant denied that he had pornography on his phone in his statement to police, a forensic exam was done of the phone seized from defendant's vehicle pursuant to the search warrant, which revealed a web history containing pornographic sites as well as local files that were pornographic videos.

When the search of the trailer was executed on March 2, 2012, detectives located a "half empty, apple-scented Palmolive green... dishwashing soap" under the sink. Sergeant Richard Dubus, who executed the warrant, explained that when he found the soap bottle he noticed hair follicles on the top of the container. These hair follicles were sent to the crime lab for analysis; however, because the root of the hair, which contains the epithelial cells, was not present, DNA analysis could not be performed

The trial court again stated that it thought defendant was objecting to the State alluding to defendant's statements in opening statements, but defense counsel stated, "No. Not at all." Defendant was asked a third time if he objected to the State alluding to defendant's statements in opening statements and defense counsel again replied, "No."

The Louisiana Supreme Court held that if the defense has prior notice of the State's intent to introduce a statement and the statement is properly admitted later, the State's premature mention of the statement in its opening statement to the jury causes no prejudice.

Intra-juror communications prior to deliberation violated the trial court's instructions, but did not amount to "outside influences" or "extraneous prejudicial information."

Defendant is not arguing that the State improperly referenced other crimes evidence or that his statement referenced other crimes evidence, in violation of La. C.E. art. 404 B.

On count two, defendant was sentenced under La. R.S. 14:78.1 D(2), which provides for a harsher penalty when the victim is under the age of thirteen. While the indictment did not specifically list the victim's birthdate or allege she was under the age of thirteen in count two, count one, charging defendant with aggravated rape, specifically alleged the victim was under thirteen. The two crimes were perpetrated on the same date ranges on the same victim. Moreover, defendant was well-informed of the fact that the State intended to prove that the victim was below thirteen years of age as a result of the jury instructions. The jury instructions provided the applicable penalty for attempted aggravated incest as "not less than twenty-five years nor more than forty-nine and a half years." Additionally, the evidence presented at trial demonstrated that L.B. was under the age of thirteen at the time of the offenses. She testified she was ten years old at the time of trial.

Although these cases deal with aggravated incest and not attempted aggravated incest, La. R.S. 14:27 requires that defendant shall be fined or imprisoned or both, in the same manner as for the offense attempted; this additional sentencing requirement applies in this case.