RICHARD BENOIT

VERSUS

KIRT GUERIN, WARDEN ELAYN HUNT
CORRECTIONAL CENTER

NO. 22-KH-547

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPLICATION FOR SUPERVISORY REVIEW FROM THE
TWENTY-NINTH JUDICIAL DISTRICT COURT
PARISH OF ST. CHARLES, STATE OF LOUISIANA
NO. 12,159, DIVISION "D"
HONORABLE M. LAUREN LEMMON, JUDGE PRESIDING

January 18, 2023

**SUSAN M. CHEHARDY**
**CHIEF JUDGE**

Panel composed of Judges Susan M. Chehardy,
Stephen J. Windhorst, and Hans J. Liljeberg

**<u>WRIT GRANTED, IN PART, FOR LIMITED PURPOSE; WRIT
DENIED, IN PART</u>**
    **SMC**
    **SJW**
    **HJL**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/RELATOR,
RICHARD BENOIT
  Emily Posner

COUNSEL FOR DEFENDANT/RESPONDENT,
KIRT GUERIN, WARDEN ELAYN HUNT CORRECTIONAL CENTER
  Honorable Joel T. Chaisson, II

COUNSEL FOR DEFENDANT/RESPONDENT,
STATE OF LOUISIANA, DEPARTMENT OF JUSTICE
  Jeffrey M. Landry
  Grant L. Willis
  J. Taylor Gray

**CHEHARDY, C.J.**

In this writ application, relator, Richard, Benoit, seeks review of the district court's September 20, 2022 judgment denying his supplemental application for post-conviction relief ("APCR"). For the following reasons, we grant relator's writ application, in part, for the limited purpose of remanding the matter to the district court for a ruling on relator's claims raised in his supplemental APCR, which were not reviewed on the merits; we deny relator's writ application, in part, as to his factual innocence claim.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Relator was indicted by a grand jury on May 8, 2012, and charged with aggravated rape of a minor under the age of thirteen, a violation of La. R.S. 14:42(A)(4)[1], and aggravated incest of a minor under the age of thirteen, a violation of La. R.S. 14:78.1.[2] *See State v. Benoit*, 17-187 (La. App. 5 Cir. 12/29/17), 237 So.3d 1214, 1216. On April 10, 2014, after a four-day trial, a unanimous jury found relator guilty of the responsive verdicts of sexual battery, in violation of La. R.S. 14:43.1 (Count 1) and attempted aggravated incest, in violation of La. R.S. 14:26 and La. R.S. 14:78.1 (Count 2). On July 30, 2014, relator was sentenced to fifty years at hard labor, with thirty-five years to be served without benefit of probation, parole, or suspension of sentence on Count 1, and forty-nine and one-half years at hard labor on Count 2, to be served concurrently.

Relator's convictions, as well as the sentence for sexual battery, were affirmed by this Court on December 29, 2017. *Benoit*, 237 So.3d at 1216. Having determined that relator's sentence on the attempted aggravated incest conviction was illegally lenient pursuant to La. R.S. 14:78.1(D)(2), as it was not imposed without restriction of benefits, this Court remanded the matter for re-sentencing.

---

[1]    La. R.S. 14:42 was subsequently amended to rename the offense to first degree rape.

[2]    Aggravated incest was later re-designated as aggravated crime against nature, La. R.S. 14:89.1.

*Id.* at 1225-26. Relator did not seek supervisory review by the Louisiana Supreme Court. On July 24, 2018, the district court re-sentenced relator on Count 2 to forty-nine and one-half years at hard labor, with twenty-five years to be served without benefit of probation, parole, or suspension of sentence, to run concurrently with the sentence imposed on Count 1. Relator did not move for reconsideration of the sentence pursuant to La. C.Cr.P. art. 881.1, or appeal pursuant to La. C.Cr.P. art. 914. Accordingly, relator's conviction and sentence became final thirty days later, on August 25, 2018.

Relator timely filed his first application for post-conviction relief ("APCR"), *pro se*, on July 10, 2020, raising the following claims: (1) ineffective assistance of counsel (pre-trial and at trial); (2) excessive sentence; (3) *Brady* violation; (4) prosecutorial misconduct; and (5) insufficient evidence to support the charge of aggravated incest. The district court ordered the State to file an answer. On April 25, 2021, the State filed an answer arguing the relator's claims lacked merit.

On June 23, 2021, after the State had filed its answer, the district court granted relator's unopposed Motion to Enroll and Set Deadline to Supplement Application for Post-Conviction Relief, and set the filing deadline for October 15, 2021. After several extensions of time were granted, relator, through counsel, filed a supplemental APCR on June 7, 2022—nearly two years after filing his original *pro se* APCR—raising the following additional claims: (1) factual innocence pursuant to La. C.Cr.P. art. 926.2;[3] (2) relator's confession and inculpatory statements were false, unreliable, and coerced in violation of his due process rights; (3) ineffective assistance of counsel, pre-trial and at trial; (4) ineffective assistance of counsel during sentencing; (5) ineffective assistance of counsel on appeal; and (6) cumulative error. As ordered by the district court, the State filed

---

[3] La. C.Cr.P. art. 926.2, effective date of August 1, 2021, provides for a freestanding claim of factual innocence not based on DNA evidence.

numerous procedural objections to relator's supplemental APCR on September 8, 2022. Specifically, the State argued that relator's claim of factual innocence failed to meet the criteria set forth in La. C.Cr.P. at. 926.2, and additionally, that relator's remaining supplemental claims were untimely under La. C.Cr.P. art. 930.8(A).[4]

On September 20, 2022, the district court issued a judgment summarily denying relator's original and supplemental APCRs. As to relator's *pro se* claims, the district court found that the record failed to establish that relator's counsel's performance was deficient or violated a duty owed to him. The district court also found that the sentence imposed was not unconstitutionally excessive based on the facts proven at trial, the details of the pre-sentencing investigation report, the mitigating factors (including relator's intoxication), and the age of the victim. Relator was sentenced to concurrent terms of fifty years (ten years less than the pre-sentencing report recommended), and forty-nine and one-half years. According to the district court, neither of these terms was grossly disproportionate to the severity of the offenses for which relator was convicted.

Additionally, the district court found no evidence of a *Brady* violation, and that relator's claim for such a violation is speculative at best. The district court further found no merit to relator's claim that the prosecutor was vindictive towards him to the extent that it unduly prejudiced him. In particular, the trial court concluded that relator failed to identify how he was prejudiced or how undue prejudice affected the judgment of the jury. Relator also failed to demonstrate any evidence that would support a mistrial pursuant to La. C.Cr.P. art. 770. According to the district court, the verdict in this case was based on evidence submitted to the jury, not the comments of counsel.

---

[4] La. C.Cr.P. art. 930.8(A) provides, in pertinent part, that "[n]o application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final."

Finally, regarding relator's claim that the State failed to prove the existence of a blood or legal relationship between himself and the victim, the district court found that relator acknowledged the victim as his daughter at trial, the mother testified that relator was the victim's father, and the victim testified that relator was her father. Consequently, the district court determined that relator's original application for post-conviction relief was without merit.

The district court next addressed the claims relator asserted in his supplemental application for post-conviction relief. As to relator's claim of factual innocence, the district court held that relator's claim for relief is procedurally barred because he failed to meet the requirements of La. C.Cr.P. art. 926.2. Specifically, relator failed to present any new, reliable, and non-cumulative scientific, forensic, physical, or non-testimonial documentary evidence that would be legally admissible at trial and that was not known or discoverable prior to trial. Further, the district court found that, while the supplemental application noted that relator claimed that he moved to test "mitochondrial DNA," no evidence was submitted indicating that relator had done so or that any as yet unfiled results demonstrate factual innocence.

The district court also determined that the remaining claims raised by relator in his supplemental application are procedurally barred as untimely. Specifically, La. C.Cr.P. art. 930.8 requires the applicant to file an APCR no later than two years after the judgment of conviction and sentence become final. Relator's conviction and sentence became final on August 25, 2018. Consequently, the district court determined that relator's claims for ineffective assistance of counsel during sentencing are procedurally barred because he did not raise the issues within two years of August 25, 2018. The district court also concluded that the claims raised in relator's supplemental application are not supplemental, but are

new and previously unraised claims, and thus, are time-barred by La. C.Cr.P. art. 930.8.

Concluding that the claims raised in relator's supplemental APCR are new, the district court found the supplemental application to be in and of itself successive to the original application pursuant to La. C.Cr.P. art. 930.4(E), which provides that "[a] successive application shall be dismissed if it raises a new or different claim that was inexcusably omitted from a prior application."[5] According to the district court, because "[n]one of the new claims raised in the supplemental application are based on new evidence or constitutional jurisprudence that could not have been discovered within the time limit for the original application for post-conviction relief," the new claims are time-barred.

Relator now seeks review of the district court's September 20, 2022 ruling, maintaining that the district court abused its discretion by procedurally barring relator's supplemental APCR claims as untimely and successive.[6] Relator also re-urges his claim of factual innocence.

**DISCUSSION**

Under La. C.Cr.P. art. 930.8, the prescriptive period does not initially begin to run until the judgment of conviction and sentence has become final under the provisions of La. C.Cr.P. arts. 914 or 922. Under Article 914, a district court's

---

[5]     Although the district court cites La. C.Cr.P. art. 930.4(D) in denying relator's claims as successive, the district court quotes the language of La. C.Cr.P. art. 930.4(E).

[6]     Following a thorough review of relator's writ application, we find that relator has not challenged the district court's ruling on the claims he raised in his original July 10, 2020 APCR. Instead, we find that relator only challenges the district court's denial of his claims filed in his supplemental APCR, as no mention is made of relator's *pro se* claims that were denied by the district court. Uniform Rules–Courts of Appeal, Rule 1–3 states:

> The scope of review in all cases within the appellate and supervisory jurisdiction of the Courts of Appeal shall be provided by LSA-Const. Art. 5, §10(B), and as otherwise provided by law. The Courts of Appeal will review only issues which were submitted to the trial court and which are contained in specifications and assignments of error, unless the interest of justice clearly requires otherwise.

On the showing made, we find that relator's writ application presents no issues or assignments of error concerning the district court's rulings on the claims relator raised in his original APCR.

judgment in a criminal case becomes final if no motion for appeal is made within thirty days after the rendition of the judgment. Pursuant to Article 922, an appellate court's judgment becomes final if no application for rehearing or review by the Supreme Court is filed within fourteen days of rendition of the appellate court's judgment.

Here, there is no dispute regarding the district court's calculation of timeliness for the filing of relator's *pro se* APCR. Specifically, the district court found that relator's convictions and sentences became final on August 25, 2018, following relators July 26, 2018 resentencing on Count 2, which relator did not move to reconsider or file an appeal. Thus, according to the district court, relator's *pro se* APCR filed on July 10, 2020, was timely under La. C.Cr.P. art. 930.8.

As a general matter, resentencing alone does not restart the prescriptive period for filing an APCR. *See State ex rel. Rushing v. Whitley*, 93-2722 (La. 11/13/95), 662 So.2d 464.[7] As previously stated, on appeal, this Court remanded relator's sentence on Count 2 for resentencing because the sentence was illegally lenient, specifically noting that "the language of the sentencing provision gives the trial court discretion in determining the exact length of time that benefits are to be restricted." *Benoit*, 237 So.3d at 1225. Consequently, this Court's remand was not based on a non-discretionary and ministerial correction of sentence, but rather, an actual resentencing thereby triggering the post-conviction prescriptive period.

There is, however, a disagreement as to the timeliness of the claims relator raised in his supplemental APCR. According to relator, these post-conviction claims are not time-barred because he "had obtained leave of court to supplement his initial [timely filed] *pro-se* application with an application written by an

---

[7] For example, a non-discretionary and ministerial correction of a sentence is not a resentencing and is not accompanied by the right to be present in court, the right to counsel, the right to appeal, or the reinstatement of the two-year delay from finality of conviction after correction. *See State v. Littleton*, 43,609 (La. App. 2 Cir. 5/7/08), 982 So.2d 978, 980, *writ denied sub nom. State ex rel. Littleton v. State*, 08-1408 (La. 3/27/09), 5 So.3d 135.

attorney." To the contrary, the district court found that relator's claims were not "supplemental," but rather, consisted of "new and previously unraised claims," thereby rendering the claims not only untimely, but successive as well.

The record evidences that on May 4, 2021, attorney Randy Lewis filed a Motion to Enroll for a Limited Purpose in relator's case, stating that he was seeking to enroll solely to obtain an extension of time in order to allow relator to retain counsel to represent him and "file pleadings on his behalf." When this motion was filed, the State, on April 25, 2021, had already filed its answer to relator's *pro se* APCR filed on July 10, 2020. On May 17, 2021, the district court granted the Motion to Enroll for Limited Purpose and gave relator ninety days to obtain counsel. On June 21, 2021, relator's newly retained counsel, Emily Posner, filed a Motion to Enroll and Set Deadline to Supplement Application for Post-Conviction Relief. In her motion, quoting *State v. Smith*, 21-110 (La. 4/7/21), 313 So.3d 260 (*per curiam*), counsel requested "a reasonable opportunity to prepare and file expeditiously a supplemental application for post-conviction relief."[8] Additionally, counsel suggested an October 15, 2021 deadline, explaining that she needed time to review relator's file, investigate the underlying facts of the case, and consult with any necessary experts. On June 23, 2021, the district court granted counsel's Motion to Set Deadline to Supplement Application for Post-Conviction Relief. According to relator, following several extensions granted by the district court related to COVID-19 delays and issues locating relator's file, relator's counseled supplemental APCR was filed on June 7, 2022.

---

[8]     In *Smith*, *supra*, the Supreme Court issued the following *per curiam*:

> Writ granted; case remanded. The district court's judgment denying applicant's pro se application for post-conviction relief is vacated, and the district court is directed to give counsel reasonable opportunity to prepare and file expeditiously a supplemental application for post-conviction relief. *See State ex rel. Hampton v. State*, 00-2523 (La. 8/31/01), 795 So.2d 1198.

22-KH-547                                    7

It is undisputed that relator's counseled supplemental APCR was filed with the district court after the expiration of La. C.Cr.P. art. 930.8's time-bar. Except as provided in La. C.Cr.P. art. 930.8, the district court has no authority to extend those limits beyond the delays set forth by the legislature. *See State v. Daigle*, 593 So.2d 676, 677 (La. App. 3 Cir. 1991), *writ denied*, 604 So.2d 980 (La. 1992). Nevertheless, the district court has discretion to determine whether the interests of justice require that a defendant be allowed to amend and supplement his *timely* filed APCR. *See State ex rel. Duhon v. Whitley*, 92-1740 (La. 9/2/94), 642 So.2d 1273. Such is the case even when the supplementation arises after the expiration of the time-bar provided in La. C.Cr.P. art. 930.8. *State v. Sampson*, 02-909 (La. 2/14/02), 841 So.2d 747 (*per curiam*).

While relator's counseled June 7, 2022 filing—standing alone—appears to be time-barred, we find the district court properly exercised its discretion pursuant to *Duhon v. Whitley*, *supra*, by granting relator time to retain counsel and supplement his *pro se* application. We find that relator's case is similar to the circumstances presented to this Court in *State v. Brown*, 21-643 (La. App. 5 Cir. 10/22/21), 2021 WL 4943475, wherein relator filed a Motion for an Extension of Sixty Days and/or Motion to Stay Post-Conviction Application, along with a uniform APCR, in which he listed his claims. In *Brown*, the district court gave relator forty-five days in which to supplement his APCR. The relator subsequently filed a memorandum in support of his APCR and a supplement to his APCR. The district court, however, denied relator's APCR as untimely pursuant to La. C.Cr.P. art. 930.8. On supervisory review to this Court challenging the district court's denial of his APCR as untimely, given that his original filing was within La. C.Cr.P. art. 930.8's prescriptive period, we found the relator's argument persuasive, stating:

> In the present case, it appears from the district court's
> August 18, 2021 Order denying relator's APCR as
> untimely, that the district court used March 26, 2021, the
> date relator filed his memorandum in support of his
> APCR, instead of January 7, 2021, the date relator filed
> an APCR along with a motion for extension, when
> calculating the time delays for filing post-conviction
> relief. As such, relator's argument has merit.
>
> Accordingly, we grant relator's writ application and
> remand the matter to the district court for the limited
> purpose of determining whether relator's writ application
> was in fact timely, and if so, we direct the district court to
> rule on the merits of the application.

*Brown*, 2021 WL 4943475, at *2 (internal footnote omitted).[9]

Similarly, in the instant case, it appears the district court based the finding of

untimeliness on the date that relator filed his counseled, supplemental APCR (June

7, 2022), rather than the date relator filed his original *pro se* APCR (July 10, 2020).

Moreover, here, the district court found relator's counseled, supplemental claims

were successive, apparently faulting relator for failing to raise those claims in his

*pro se* APCR, despite having granted relator leave to retain counsel and to

supplement his timely filed APCR.[10]

*Pro se* filings are subject to less stringent standards than formal pleadings

filed by lawyers. *State ex rel. Egana v. State*, 00-2351 (La. 9/22/00), 771 So.2d

638 (*per curiam*). A *pro se* petitioner is not to be denied access to the courts for

review of his case on the merits by the overzealous application of form and

---

[9]     On remand, the State conceded the timeliness of the relator's APCR in its response filed with the district court.

[10]     The district court excluded relator's claim of factual innocence from its finding of untimeliness and successiveness, presumably in reliance on La. C.Cr.P. art. 926.2(A), which provides, in part:

> A petitioner's first claim of factual innocence pursuant to this Article that
> would otherwise be barred from review on the merits by the time
> limitation provided in Article 930.8 or the procedural objections
> provided in Article 930.4 shall not be barred if the claim is contained in
> an application for post conviction relief filed on or before December 31,
> 2022, and if the petitioner was convicted after a trial completed to
> verdict. This exception to Articles 930.4 and 930.8 shall apply only to
> the claim of factual innocence brought under this Article and shall not
> apply to any other claims raised by the petitioner.

pleading requirements or hyper-technical interpretations of court rules. *Id.* In regard to relator's additional claims challenging counsel's effectiveness raised in his supplemental APCR, we find that relator laid the groundwork for those claims in his *pro se* APCR, which included a detailed list of counsel's alleged errors. While relator's supplemental claim of involuntary confession was not raised in his *pro se* APCR, the underlying argument appears in his *pro se* claim challenging counsel's ineffectiveness. Specifically, in relator's *pro se* APCR, he argued that counsel failed to file a motion to suppress his statement on the basis that his statement was a product of coercion. Additionally, relator's claim of factual innocence also rests, in part, on relator's claim of coerced confession. Given that relator's original *pro se* filing on July 10, 2020, was construed as a timely filed APCR by the district court, and in light of the fact that relator's request to retain counsel and to file a supplemental APCR was granted without objection from the State, we find that relator's counseled APCR filed on June 7, 2022, is, in essence, an amendment to his July 10, 2022 APCR, rather than an entirely new filing.

Accordingly, we find that relator's supplementation of his prior *pro se* APCR was, in fact, timely, and thus, grant relator's writ application for the limited purpose of remanding the case to the district court for a ruling on the merits of the claims raised in relator's supplemental APCR (with the exception of relator's claim of factual innocence).[11]

---

[11]     *See Sampson*, *supra*, in which the Supreme Court reversed the appellate court order finding that the relator's application was time-barred and remanded to the district court for further proceedings, stating:

> Whatever the words used in its order, the district court was acting within its discretion when it in effect ordered supplementation of the timely-filed application for post-conviction relief, even if the supplementation were not to arrive until after the expiration of the prescriptive period. *State ex rel. Duhon v. Whitley*, 92-1740 (La. 9/2/94), 642 So.2d 1273; *cf. Muntz v. Lensing*, 96-0230 (La. 3/8/96), 668 So.2d 1147.

As to relator's claim of factual innocence, we find that this claim is subject to review in light of the district court's finding that relator failed to meet the requirement of La. C.Cr.P. art. 926.2(B), which provides, in pertinent part:

A. A petitioner who has been convicted of an offense may seek post conviction relief on the grounds that he is factually innocent of the offense for which he was convicted. A petitioner's first claim of factual innocence pursuant to this Article that would otherwise be barred from review on the merits by the time limitation provided in Article 930.8 or the procedural objections provided in Article 930.4 shall not be barred if the claim is contained in an application for post conviction relief filed on or before December 31, 2022, and if the petitioner was convicted after a trial completed to verdict. This exception to Articles 930.4 and 930.8 shall apply only to the claim of factual innocence brought under this Article and shall not apply to any other claims raised by the petitioner. An application for post conviction relief filed pursuant to this Article by a petitioner who pled guilty or nolo contendere to the offense of conviction or filed by any petitioner after December 31, 2022, shall be subject to Article 930.4 and 930.8.

B. (1)(a) To assert a claim of factual innocence under this Article, a petitioner shall present new, reliable, and noncumulative evidence that would be legally admissible at trial and that was not known or discoverable at or prior to trial and that is either:

(i) Scientific, forensic, or nontestimonial documentary evidence.

(ii) Testimonial evidence that is corroborated by evidence of the type described in Item (i) of this Subparagraph.

(b) To prove entitlement to relief under this Article, the petitioner shall present evidence that satisfies all of the criteria in Subsubparagraph (a) of this Subparagraph and that, when viewed in light of all of the relevant evidence, including the evidence that was admitted at trial and any evidence that may be introduced by the state in any response that it files or at any evidentiary hearing, proves by clear and convincing evidence that, had the new evidence been presented at trial, no rational juror would have found the petitioner guilty beyond a reasonable doubt of either the offense of conviction or of

any felony offense that was a responsive verdict to the offense of conviction at the time of the conviction.

In support of his claim of factual innocence, relator submitted the reports of two experts: Dr. Richard A. Leo, an expert in false confessions, who concluded that the police used "psychologically coercive" interrogation techniques, which caused relator "to make and agree to psychologically involuntary statements;" and Dr. Alicia Pellegrin, an expert in child sexual abuse cases, who opined that improper protocol was followed during both the forensic interview and the evaluation of the victim.

Regarding relator's claim of a false confession, it appears that, at trial, part of the defense strategy rested on challenging the voluntariness of relator's confession wherein he made statements explaining his self-diagnosed sexual addiction and drinking problem as an explanation as to how he may have come to commit the charged offenses. In particular, during the defense's opening statement, counsel described how relator was interrogated for over three hours in a cold room while dressed only in a paper gown. Counsel also referred to how relator made "97 denials' during the interrogation. Next, relator's counsel cross-examined Detective Walter Banks about relator's interrogation, specifically inquiring as to its duration, the temperature of the room, the paper gown relator was required to wear, the repetitive content of the questions, and relator's repeated denials of guilt. Additionally, relator testified at trial that:

> [H]e never sexually abused or touched L.B. inappropriately. He first learned about these allegations in February 2012, when he was confronted by J.A. and J.B. On the five or six occasions he told police that he was drinking and had no knowledge of what happened, L.B. had only stayed with him for one of those times. When further confronted with his acknowledgment of how the abuse could have happened, he testified that he only said what he thought he should say so he could go back to his cell. When he was brought to the jail, he was placed on suicide watch and put in paper clothes. The interview room was cold and he was "ready to get out of

the room" because he was "tired of discussing this with them."

*Benoit*, 237 So.3d at 1218-19. Finally, the defense counsel's closing argument focused on false confessions and the coercive nature of relator's own statement.

Considering that relator's own testimony and the defense strategy of characterizing relator's statement as a false confession, we find that Dr. Leo's findings to that effect are not new nor noncumulative evidence as required by La. C.Cr.P. art. 926.2(B)(1)(a). Dr. Leo's report relied on relator's testimony about the interrogation in concluding that relator's confession was a product of "psychological coercion." Further, Dr. Leo opined that "[n]umerous interrogation/false confession experts were available to consult with Mr. Benoit's counsel, and/or testify on behalf of, Mr. Benoit at the time of his trial in 2014." Thus, we find that relator is now hard-pressed to show that expert testimony regarding false confessions "was not known or discoverable at or prior to trial" as required by La. C.Cr.P. art. 926.2(B)(1)(a).

As to Dr. Pellegrin's report, her findings critiqued the investigation conducted by the forensic interviewer and the nurse who examined the victim— findings which may raise credibility issues about the State's witnesses, but do not present newly available evidence of factual innocence. Furthermore, on the showing made, we find that relator has failed to establish that expert testimony concerning the proper investigation of child sexual abuse "was not known or discoverable at or prior to trial" as required by La. C.Cr.P. art. 926.2(B)(1)(a), but instead appears to fall within the ambit of trial strategy. *See State v. Allen*, 06-778 (La. App. 5 Cir. 4/24/07), 955 So.2d 742, 751, *writ denied sub nom. State ex rel. Allen v. State*, 08-2432 (La. 1/30/09), 999 So.2d 754 (the decision to call or not to call a particular witness is a matter of trial strategy and not, *per se*, evidence of ineffective assistance of counsel). According to Dr. Pellegrin's expert report, such

an omission of expert testimony lies with relator's trial counsel for failing to retain an expert witness on this subject.

Considering the above, we find no error in the district court's ruling that relator's claim of factual innocence falls short of the requirements set forth in La. C.Cr.P. art. 926.2.

Alternatively, relator submits the district court should have stayed its ruling on his factual innocence claim until after a ruling on relator's Motion for DNA Testing was made. La. C.Cr.P. art. 926.1(A)(1) permits a defendant convicted of a felony to seek DNA testing of evidence that was "secured in relation to the offense for which he was convicted." As part of his factual innocence claim, relator indicated his intent to request DNA testing of the hair found on the bottle of green dish soap that was admitted into evidence at trial by the State.[12] Nonetheless, relator fails to provide any legal support for his request for a stay of his factual innocence claim while he pursues DNA testing. Specifically, La. C.Cr.P. art. 926.1(B) provides that an application shall allege the following:

(1) A factual explanation of why there is an articulable doubt, based on competent evidence whether or not introduced at trial, as to the guilt of the petitioner in that DNA testing will resolve the doubt and establish the innocence of the petitioner.

(2) The factual circumstances establishing the timeliness of the application.

(3) The identification of the particular evidence for which DNA testing is sought.

(4) That the applicant is factually innocent of the crime for which he was convicted, in the form of an affidavit signed by the petitioner under penalty of perjury.

---

[12] At trial, the victim indicated that relator put green dish soap on her "private part." During the search of relator's trailer, detectives found a "half empty, apple-scented Palmolive green … dishwashing soap" under the sink. At trial, Sergeant Richard Dubus, the officer who executed the warrant, explained that when he found the soap bottle, hair follicles were on top of the container. The hair follicles were sent to the crime lab for analysis. However, because the root of the hair, which contains the epithelial cells, was not present, DNA analysis could not be performed. *Benoit*, 237 So.3d at 1217-18 n.8. Nevertheless, Mr. Mai, the State's serology expert, testified that testing for mitochondrial DNA of the hair could be possible but that type of analysis was not conducted at the St. Charles Parish laboratory.

To date, as relator has not moved for DNA testing under the statute, on the showing made, we find that relator's request for a stay lacks merit.

For the foregoing reasons, we grant relator's writ application, in part, for the limited purpose of remanding this case to the district court for a ruling on the merits of the claims raised by relator in his counseled supplemental APCR, which were not reviewed by the district court. As to his claim of factual innocence, on the showing made, relator's writ application is denied.

**<u>WRIT GRANTED, IN PART, FOR LIMITED PURPOSE; WRIT DENIED, IN PART</u>**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
INTERIM CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**JANUARY 18, 2023** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 22-KH-547

**E-NOTIFIED**
29TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE M. LAUREN LEMMON (DISTRICT JUDGE)
EMILY POSNER (RELATOR)       GRANT L. WILLIS (RESPONDENT)       J. TAYLOR GRAY (RESPONDENT)

**MAILED**
HONORABLE JEFFREY M. LANDRY
(RESPONDENT)
ATTORNEY GENERAL
LOUISIANA DEPARTMENT OF JUSTICE
POST OFFICE BOX 94005
BATON ROUGE, LA 70804

HON. HONORABLE JOEL T. CHAISSON, II
(RESPONDENT)
DISTRICT ATTORNEY
TWENTY-NINTH JUDICIAL DISTRICT
COURT
POST OFFICE BOX 680
HAHNVILLE, LA 70057