Judgment rendered January 14, 2026.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,710-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

ANTHONY J. HOLLIS                           Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 397,853

Honorable Christopher T. Victory, Judge

* * * * *

LOUISIANA APPEALS AND WRIT                  Counsel for Appellant
SERVICE
By: Remy V. Starns
    Michael A. Mitchell
    Barry S. Ranshi

JAMES E. STEWART, SR.                        Counsel for Appellee
District Attorney

VICTORIA T. WASHINGTON
Assistant District Attorney

* * * * *

Before STONE, HUNTER, and ELLENDER, JJ.

**HUNTER, J.**

Defendant, Anthony J. Hollis, appeals a jury verdict finding him guilty of sexual battery and a sentence of 90 years at hard labor under La. R.S. 14:43.1(C)(2). For the following reasons, we affirm Defendant's conviction and sentence.

## FACTS

On November 16, 2023, a Caddo Parish grand jury indicted Anthony J. Hollis ("Defendant") for first degree rape of C.C., a child under the age of 13, with the incident alleged to have occurred around November 14, 2020, through November 13, 2022. C.C. disclosed the alleged abuse to a family friend months after the final incident occurred on September 16, 2023.

C.C.'s mother, Alicia, and Defendant were married from August 2018 to 2024, and their relationship was described as "tumultuous." In early July of 2023, Alicia witnessed Defendant kiss C.C. on the lips when they were moving furniture. Although Alicia asked him if "anything" had happened, C.C. stated that at the time, he was too uncomfortable to describe the incidents of alleged sexual abuse that occurred when he was around 11 or 12 years old. In addition, Alicia's close friend, Delores Boyd ("Ms. Boyd"), spoke with C.C. in the summer of 2023 and he informed Ms. Boyd of the molestation that occurred when he was 11 years of age. This revelation prompted Alicia to file a report with law enforcement.

Detective Breanna Gerbine, a detective with the Caddo Parish Sheriff's Office, investigated the case. A Gingerbread interview was scheduled with Meghan Hughes ("Ms. Hughes"), a forensic

interviewer.[1] Ms. Hughes explained the Children's Advocacy Center's standardized approach for contextualizing the child's statements.

During the interview with Ms. Hughes, C.C. described several incidents of sexual abuse. C.C. stated that when he was between the ages of 11 or 12, Defendant grabbed his penis. Detective Gerbine testified that C.C. told Ms. Hughes about several incidents. C.C. also alleged that when he was around the same age, Defendant instructed him to get on his knees to "suck him off," and then pushed his penis into C.C.'s mouth. Another instance occurred where Defendant kissed C.C. on the lips in his bedroom, called him a "good kisser," and tried to insert his finger into C.C.'s rectum.

Detective Gerbine interviewed Defendant. During the interview, Defendant initially stated he kissed C.C. on his forehead. Later, he changed his statement and admitted to kissing C.C. on his lips. Defendant also stated he believed C.C. was homosexual. Defendant also asserted C.C. came to his room, got on top of him, and obtained an erection.

An amended bill of indictment was filed on February 1, 2024, charging Defendant with first degree rape. Counsel for the defense filed pretrial motions, specifically for bond reduction, preliminary examination, discovery, and motion for a speedy trial. A jury trial commenced on November 18, 2024, and the evidence introduced by the State included the testimony of C.C., Alicia, Ms. Boyd, Detective Gerbine, and Ms. Hughes. Defendant testified on his own behalf.

At the conclusion of the testimony, the district court instructed the jury on sexual battery, defining it as the intentional touching of the victim's

---

[1] The State used Ms. Hughes' testimony to describe the interviewing process and played the recorded interview for the jury.

intimate areas either without consent or when the victim is under fifteen and at least three years younger than the offender, regardless of the offender's knowledge of age. After hearing the evidence, the jury returned a verdict finding Defendant guilty of sexual battery, a responsive verdict of first degree rape.

Defendant appeals.

## DISCUSSION

### *Sufficiency of the Evidence*

Defendant argues the evidence was insufficient to support his conviction. He maintains the State relied solely on the uncorroborated testimony of C.C., which he claims arose in a highly suggestive, contentious family environment during the marital breakup of Defendant and C.C.'s mother. According to Defendant, the timing of the disclosure, occurring on the same day he informed C.C.'s mother of his intent to divorce and her seeking a protective order, shows C.C. had a motive to fabricate allegations. In addition, Defendant asserts that his own testimony at trial, during which he denied the allegations, created reasonable doubt regarding C.C.'s testimony. Defendant further argues the jury's request to rewatch the video of C.C.'s forensic interview indicates their verdict rested on questionable testimony and that the State failed to rebut the reasonable hypothesis that the accusations stemmed from family conflict rather than criminal conduct.

The standard of appellate review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v.*

*Tate*, 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert. denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004); *State v. Ward*, 50,872 (La. App. 2 Cir. 11/16/16), 209 So. 3d 228, *writ denied*, 17-0164 (La. 9/22/17), 227 So. 3d 827.

The appellate court's function is not to assess credibility or weigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So.2d 442. The reviewing court must afford great deference to a jury's decision to accept or reject the testimony. *State v. Allen*, 36,180 (La. App. 2 Cir. 9/18/02), 828 So. 2d 622, *writ denied*, 02-2595 (La. 3/28/03), 840 So. 2d 566. "Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency." *State v. Allen*, *supra*, at 626. When a witness's testimony contains no internal contradictions and does not conflict with physical evidence, that testimony alone can be sufficient to support a factual finding, even without supporting medical, scientific, or physical evidence. *State v. Felix*, 56,367 (La. App. 2 Cir. 8/27/25), 419 So. 3d 427. To convict a defendant based upon circumstantial evidence, every reasonable hypothesis of innocence must be excluded. La. R.S. 15:438; *State v. Barakat*, 38,419 (La. App. 2 Cir. 6/23/04), 877 So. 2d 223.

Pursuant to La. R.S. 14:43.1(A)(1) and (2), sexual battery is defined, in pertinent part,  as the intentional touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender, directly or through clothing, when the offender acts without the consent of the victim or when the victim has not yet attained fifteen years of age and is at least three years younger than the offender. *State v. Coliston*,

4

56,332 (La. App. 2 Cir. 8/27/25), 420 So. 3d 284; *State v. Naulty*, 24-0118 (La. App. 1 Cir. 2/27/25), 406 So. 3d 1231.

In the instant case, the evidence established that during the time the sexual abuse was committed, from November 14, 2020, through November 2022, C.C. was under the age of 13 (born November 14, 2009) and Defendant (born June 1, 1972) was at least over 45 years old. Further, during the trial, C.C. testified. During his testimony, the video of the forensic interview was played, and C.C. confirmed he was telling the truth during the interview. During the interview, C.C. stated that the first incident of sexual abuse occurred when he was 11 or 12 years old, when Defendant entered the bathroom while he (C.C.) was in the shower. He stated Defendant opened the shower curtain, looked down at his penis, grabbed his penis, and began to "stroke" it. The interaction stopped when C.C.'s mother called Defendant, and Defendant told C.C. not to tell anyone. C.C. also described another incident during which Defendant entered his bedroom, began to kiss him, and grabbed his "butt" and his penis. C.C. stated Defendant put his hands inside of his shorts and tried to "stroke his penis." Additionally, C.C. described an incident when Defendant approached him, began to kiss him, and told him he wanted him to "suck him off." C.C. stated Defendant directed him (C.C.) to kneel in front of him (Defendant) and open his mouth; he complied and Defendant inserted his penis into his mouth and began to moan.

At trial, C.C. unequivocally described the acts committed by Defendant, including kissing him on the lips, directing him to "get down" and "suck him off." C.C. stated, "He had me open my mouth and he put [his penis] in my mouth . . and told me to suck on it." C.C. testified that he

5

initially complied, but he stopped because "I felt like I had to vomit." Thereafter, Defendant told him, "[Y]ou almost got me," which C.C. understood Defendant to mean that he almost ejaculated. C.C. stated that on one occasion, his mother witnessed Defendant kissing him on the lips, and that was the last time he was in the house with Defendant. He stated he did not initially disclose the sexual abuse to his mother because he "just didn't want her to feel that guilt[.]"

Ms. Boyd testified she and Alicia met at work, and she had known C.C. since he "was just a baby in diapers." She stated that in 2023, Alicia voiced some concerns to her about C.C., and she had noticed a "big change" in him. According to Ms. Boyd, C.C. had gone from a well-groomed "happy-go-lucky kid," to being "distant" and wearing his hair "in his face hiding his eyes." She stated she asked C.C. about "hiding" his face and eyes, and he told her he was afraid because his mother and Defendant were "always fighting" and that "something went on with him." Ms. Boyd further testified that C.C. expressed to her that Alicia had seen Defendant kiss him "in the mouth" and he became afraid when Alicia began screaming. She also stated that C.C. told her that Defendant had him perform oral sex on him, and the abuse "had been going on three years since he was eleven[.]"

Alicia also testified at trial. She stated she and defendant married in 2018, and they divorced in January 2024. She testified that after C.C. disclosed the sexual abuse to Ms. Boyd, he told her, "something happened." Therefore, she decided to call law enforcement, and a police officer scheduled the forensic interview. According to Alicia, C.C. never disclosed any specific acts of sexual abuse to her; however, she saw Defendant "right

6

up against [C.C.] kissing him." She described the kiss as "an intimate kiss." She stated she screamed, and Defendant left the house and never returned.

During cross-examination, Alicia testified that her relationship with Defendant was tumultuous, primarily due to his "addiction issues." She also testified that at the time she saw Defendant kissing C.C., Defendant was no longer living in the home. Alicia further stated that Defendant and C.C. "just didn't get along a lot" because of "discipline-type issues."

Detective Gerbine, a juvenile detective specializing in sexual and physical abuse of children, also testified at trial. Detective Gerbine explained that police officers do not typically interview child victims of abuse; therefore, she arranged for C.C. to be interviewed by a forensic examiner. She stated she witnessed the interview from a separate room, and she testified as to what C.C. conveyed during the interview.

Ms. Hughes was accepted by the trial court as an expert in forensic interviewing. She described the interviewing process as "a completely non-biased" procedure designed to obtain information from the child. Ms. Hughes explained that some children, like C.C., are "delayed" disclosers of abuse, who wait months or years before disclosing abuse. She stated that during the interview, she could tell that C.C. "was ready to talk about it." However, she could tell from C.C.'s demeanor that he felt shame and guilt due to the acts he was forced to perform.

Defendant testified during the trial. He stated he and Alicia met when he was incarcerated in Texas, and she volunteered in prison ministry. They married within months of his release from prison. Defendant described his on-and-off relationship with Alicia. He admitted he kissed C.C. and stated that he had kissed C.C. and his sister "probably hundreds of times."

7

However, Defendant explained he grew up kissing his parents, but "never in a passionate way." He stated he left Alicia's house "for good that day" because he could not handle being accused of behaving inappropriately with C.C. Defendant also described Alicia as controlling, and he stated she had a problem because he refused to stop drinking alcohol. He stated she placed a "tracker" on his phone to "control" him. He stated he was arrested for sexually abusing C.C. two weeks after he told Alicia he was divorcing her.

Defendant denied ever touching C.C.'s genital area or forcing C.C. to perform oral sex on him. He also denied touching C.C.'s "butt." Defendant stated Alicia did not take C.C. for a forensic interview until three months after she witnessed the alleged kiss. According to Defendant, Alicia and C.C. are lying about the allegations, and C.C. "got exactly what he wanted" because he "wanted his mom to himself [and] he didn't like sharing her with me."

Our review of the record reveals C.C.'s testimony regarding the acts of sexual abuse was consistent with the statements he made during his forensic interview. The testimony was also supported by the testimony of Alicia, Detective Gerbine, and Meghan Hughes. One witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. *State v. Walker*, 55,255 (La. App. 2 Cir. 8/9/23), 369 So. 3d 488; *State v. Gullette*, 43,032 (La. App. 2 Cir. 2/13/08), 975 So. 2d 753. This principle is equally applicable to victims of sexual assault; such testimony alone is sufficient even when the state offers no medical, scientific, or physical evidence to prove the commission of the offense by the defendant. *State v. Walker, supra*; *State ex rel. P.R.R., Jr.*, 45,405 (La. App. 2 Cir. 5/19/10), 36 So. 3d 1138.

8

Herein, the jury was able to observe the testimony of C.C., as well as the testimony of Defendant. It is clear from the verdict; the jury did not believe defendant's assertion that the allegations arose out of the marital issues between him and Alicia. When viewed under the *Jackson* standard, we find the evidence was sufficient to support the jury's verdict. This assignment of error lacks merit.

### Expert Credibility

Defendant also contends the Gingerbread House forensic interview violated *State v. Foret*, 628 So. 2d 1116 (La. 1993), because the interviewer, Ms. Hughes, indirectly bolstered C.C.'s credibility by explaining general behaviors of child victims and "types of disclosure." He also asserts that the verdict turned on credibility and was reduced from first degree rape to a lesser charge after jurors viewed the expert-framed interview, which demonstrates the undue influence of Ms. Hughes' testimony. Therefore, he asserts the interviewer's testimony exceeded the limits set forth in *Foret* and contributed to an unfair trial.

Louisiana law permits expert testimony to help jurors understand specialized topics but prohibits experts from vouching for a witness's credibility or influencing the jury's assessment of a child's truthfulness. *State v. Foret*, *supra*. Expert testimony must remain within the limits set by the Louisiana Code of Evidence, which bars credibility-based opinions and excludes evidence whose prejudicial impact outweighs its value. La. C.E. art. 702; La. C.E. art. 608(A); La. C.E. art. 403.

Louisiana jurisprudence requires an objection in the trial court to claim error on the appeal. La. C.Cr. P. art. 841. The purpose of the contemporaneous objection rule is to put the trial judge on notice of an

9

alleged irregularity, allowing him the opportunity to make the proper ruling and correct any claimed prejudice to the defendant, procedural irregularity, or evidentiary mistake. *State v. Benoit*, 17-187 (La. App. 5 Cir. 12/29/17), 237 So. 3d 1214. Further, a defendant is limited to the grounds for objection that he articulated in the trial court, and a new basis for the objection may not be raised for the first time on appeal. *State v. Taylor*, 04-346 (La. App. 5 Cir. 10/26/04), 887 So.2d 589, 594.

In *State v. Tabb*, 383 So. 3d 155, 514 (La. App. 2 Cir. 4/10/24), 383 So. 3d 1066, *writ denied*, 24-00617 (La. 1/14/25), 398 So. 3d 648, on appeal, the defendant argued that the State's use of a codefendant's plea agreement violated his due process rights. The State countered that he waived this claim because he made no contemporaneous objection at trial. This Court agreed, holding that appellate review is limited to issues preserved at trial, and new objections cannot be raised for the first time on appeal. La. C. Cr. P. art. 841 (A). Because the defendant failed to object contemporaneously, he waived the claim, and this Court found no merit in his argument.

In *State v. Sajna*, 23-0893 (La. App. 1 Cir. 9/20/24), 405 So. 3d 667, *writ denied*, 24-01290 (La. 2/19/25), 400 So. 3d 926, the defendant was convicted of two counts of aggravated rape of a victim under the age of 13 and sentenced to life in prison. On appeal, the defendant argued that the trial court improperly admitted the expert testimony of a doctor specializing in child maltreatment. However, because the defendant did not make a contemporaneous objection to any part of the doctor's testimony at trial, he waived the right to appellate review. The court concluded that the lack of objection waived the issue on appeal.

10

In the instant case, the record does not reflect any objection made by Defendant to Ms. Hughes' testimony. Furthermore, Defendant testified in his own defense and stated he had "no objection" to the Gingerbread House interview being played for the jury. Accordingly, this assignment of error lacks merit.

### Denial of Motion to Reconsider Sentence & La. C. CR. P. art. 814(A)(12)

Defendant's third assignment of error claims the trial court should have given the jury an "under thirteen" responsive verdict under La. C. Cr. P. art. 814 because the charged first degree rape occurred within a time span that included both before and after the C.C.'s thirteenth birthday. He argues that, since some alleged acts happened when the victim was under thirteen and others after C.C. turned thirteen, the jury needed the proper responsive verdict options to determine which acts occurred when. By failing to provide this option, defendant contends, the court improperly took away the jury's fact-finding role contrary to *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d (U.S. 2000), creating a structural error that requires his sentence to be vacated.

Pursuant to La. C. Cr. P. art. 814(A)(11), the jurors in this case were provided with the following responsive verdicts to first degree rape (formerly aggravated rape):

1) Guilty of First Degree Rape
2) Guilty of Attempted First Degree Rape
3) Guilty of Second Degree Rape
4) Guilty of Attempted Second Degree Rape
5) Guilty of Third Degree Rape
6) Guilty of Attempted Third Degree Rape
7) Guilty of Sexual Battery
8) Guilty of Molestation of a Juvenile
9) Guilty of Attempted Molestation of a Juvenile
10) Guilty of Indecent Behavior with a Juvenile

11

11) Guilty of Attempted Indecent Behavior with a Juvenile
12) Not guilty

The jury returned with a verdict of "guilty of sexual battery." The jury did not indicate on the verdict form that the defendant was older than 17 years of age or that the victim was under the age of 13.

In *Apprendi*, *supra*, the petitioner pleaded guilty to a state offense with a sentencing range of five to ten years. However, the trial court imposed a twelve-year sentence pursuant to a hate crime statute that allowed a sentence to be enhanced if the trial judge found by a preponderance of the evidence that the crime was motivated by racial bias. *Id.*, 530 U.S. at 470, 120 S. Ct. at 2348. The Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt."

In *Neder v. United States*, 527 U.S. 1, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999), the United States Supreme Court held that "a [jury] instruction that omits an element of the offense does not *necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence," and harmless error analysis may be appropriate. *Id.*, 527 U.S. at 8-9, 119 S. Ct. 1827 (emphasis in original). Moreover, the *Neder* Court found that if a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless. *Id.*

In *State v. Gibson*, 09-486 (La. App. 5 Cir. 3/9/10), 38 So. 3d 373, *writ denied*, 10-0802 (La. 11/5/10), 50 So. 3d 814, the defendant was

initially charged with aggravated rape but was found guilty of the responsive verdict of sexual battery. The defendant argued that the trial court erred in sentencing him in accordance with the penalty provision of La. R.S. 14:43.1(C)(2), an enhanced penalty imposed when the offense involves a victim under 13 years old, and the offender is 17 years or older. The defendant asserted that neither the jury's verdict nor the jury instructions referenced the additional age requirements of La. R.S. 14:43.1(C)(2). The jury, however, did not indicate on the verdict form that the defendant was older than 17 years of age or that the victim was under the age of 13. The Court held that the failure to submit a sentencing factor to the jury is not a structural error and is subject to harmless error analysis. Ultimately, the Court concluded despite the *Apprendi* violation, the evidence, viewed in the light most favorable to the prosecution, was sufficient to establish the defendant was 17 or older and the victim was under the age of 13 at the time of the offense.

In *State v. Wagar*, 54,941 (La. App. 2 Cir. 3/1/23), 357 So. 3d 984, the defendant appealed his conviction for sexual battery, arguing in part, that the bill of information, as amended, and the jury instructions were defective because they did not require the jury to find that the victim was under the age of 13. This Court found an *Apprendi* violation, conducted a harmless error analysis, and concluded the error was harmless.

In this case, Defendant was charged by bill of indictment with first degree rape of a child under the age of 13, in violation of La. R.S. 14:42(A)(4). The bill of indictment contains the victim's initials, the victim's date of birth, Defendant's date of birth, and the time frame of the sexual offense. The jury was charged with the elements of first degree rape,

13

as well as sexual battery. Although the verdict form does not explicitly reference sexual battery of a child under the age of 13, Defendant was placed on notice that he was being charged with committing sexual acts (aggravated rape) against a child under the age of 13. The kiss on the lips, witnessed by C.C.'s mother, occurred in July 2023, after C.C. turned 13; however, this does not negate that the jury was presented with evidence that much of the sexual abuse occurred when C.C. was between the ages of 11 and 12. Accordingly, the State proved beyond a reasonable doubt that C.C. was under 13 years of age when the abuse began in 2020, and 13 years old when it ended in 2022. Although the trial court committed an *Apprendi* violation, we find the error harmless. This argument lacks merit.

### *Denial of the Post-Verdict Motion for Judgment of Acquittal (La. C. Cr. P. art. 821)*

In the final assignment of error, Defendant argues that the trial court erred in denying the motion for post-verdict judgment of acquittal under La. C. Cr. P art. 821 reviewed under the *Jackson* framework. However, upon review, this argument was addressed in the assignment of error regarding sufficiency of the evidence.

## CONCLUSION

For the reasons set forth herein, Defendant's conviction and sentence is hereby affirmed.

**AFFIRMED.**

14